Niles v. Sprague.

## NILES *et al.* v. SPRAGUE *et al.*

1. EVIDENCE OF MARRIAGE. The sufficiency and weight of evidence tending to show marriage, considered and discussed.

2. RECORD EVIDENCE OF MARRIAGE. The laws of Ohio require that a certificate of marriage shall be returned by the officiating minister or officer to the clerk of the county, by whom it should be recorded. *Held,* That an exemplification of the certificate would be admissible in evidence ; but that an exemplification of a mere note or *memorandum* on the records of the clerk would not be admissible.

3. INSTRUCTIONS. A suggestion by the court below to the jury that the case at bar had been twice tried and that it was important that they should agree, if they could satisfy their minds as to the right of the case between the parties, was not erroneous.

4. EVIDENCE: JURY. Where the court instructed the jury that a certain fact must be proved by *competent* evidence to entitle the plaintiff to recover, it was held that as nothing but competent evidence was before the jury, whose province it was to determine its sufficiency or weight, the instruction would not be construed as directing the jury to consider whether or not it was legally fit or suitable to prove such fact.

5. LEGITIMACY. A child born in wedlock, though but a short time after marriage, is presumed legitimate, and the issue of a marriage which is voidable merely is legitimate, and cannot be bastardized in a collateral proceeding by showing that the marriage was voidable.

6. EVIDENCE: ACKNOWLEDGMENT. Slight evidence of a reputed relationship, accompanied by acknowledgments on the part of the reputed father, is not alone sufficient to establish the heirship of such father to the child.

7. SAME: DECLARATIONS. The declarations of a husband and wife are not competent to establish the illegitimacy of a child begotten and born during wedlock; but the declarations of a mother and putative father are admissible for the purpose of showing that they were never lawfully married.

*Appeal from Washington District Court.*

TUESDAY, APRIL 22.

ACTION of right, to recover certain real estate in Iowa county. Both parties claim under Linus Niles, deceased. It is admitted that he died without issue, and never was married. The plaintiffs claim that he was the lawful son of Sanford and Mary or Polly Niles—formerly Mary or Polly Furguson; that Sanford, after the birth of Linus, did not live with the said Polly, but with one Susan Spooner, by whom he raised a family—the present plaintiffs; that the father, Sanford, and the mother, Polly, are dead, and plaintiffs are entitled to the estate of the father in the lands of the son, Linus.

Defendants admit that Linus was the son of Polly, but deny that Sanford was his father, or that they were ever married. They say that after the birth of Linus, his mother married Jonathan Sprague, to whom were born the present defendants, who, as heirs-at-law of the said Polly, claim to inherit this land. Two trials by jury, in each a disagreement, verdict for defendants on third trial, and plaintiffs appeal.

*Clarke & Davis* and *Clark & Bro.* for the appellants.

Where the child has been conceived before marriage, and born after it, the law presumes him to be legitimate, although the marriage may have taken place but a short time before its birth. 1 Bouv. Inst., 126; *Page* v. *Dennison*, 1 Grant's Cases (Pa.), 377; *The State* v. *Herman*, 13 Ired., 502; *Stegall* v. *Stegall*, 2 Brock., 256; Reeves on Dom. Rel., 270–273; 2 Stark. Ev., 135. Mere probability of non-access by the husband does not repel the presumption of legitimacy, but if evidence places non-access *beyond all reasonable doubt*, such presumption is thereby repelled.

*Com.* v. *Stricker*, 1 Brown, appx., 47; *Stegall* v. *Stegall*, 1 Brock., 256; *Morris* v. *Davies*, 14 Eng. Com. Law, 534; Id., 645. And the declarations of the parents, that the child is illegitimate, are not sufficient to overcome the presumption of the legitimacy of a child born in wedlock, though born within less than nine months after the marriage. *Dejoe* v. *Johnson*, 12 La., An., 853; *Bowles* v. *Bingham*, 2 Mumf., 442; 3 Id., 599; *Stegall* v. *Stegall*, 2 Brock., 256; 2 Stark. Ev., 139; *Cope* v. *Cope*, 24 Eng. Com. Law, 730; *Page* v. *Dennison*, 1 Grant's Cases (Pa.), 377. And after the lapse of thirty years, and the death of the parents and child, its legitimacy will be presumed on slight proof. *Johnson* v. *Johnson*, 1 Dessausure, 595; 1 Bouv. Inst., 129.

The court held that the admissions of the parents, that they had been married, and that Linus was their son, supported by the common reputation of these facts in the family of both, and the admissions of said Linus himself, was slight evidence of the legitimacy of the said Linus, and this, too, after a lapse of fifty years. Now in cases of this kind, the fact of marriage may be proved in any one of four ways: 1. By record evidence; 2. The conduct and acknowledgment of the parties; 3. The testimony of one present at the ceremony; 4. By common reputation. 1 Bouv. Inst., 112; *Jackson* v. *Claw*, 18 Johns., 345; 3 Phil. on Ev., 597 (ed., 1859); *Doe* v. *Fleming*, 4 Bing., 264; 13 Eng. Com. Law, 497; 2 Phil. on Ev. (Ed. 1859, 3 vol.) 279; 1 Id., 631; Id., 251; *Fenton* v. *Reed*, 4 Johns., 51.

And the declarations of the parents, in *favor* of the legitimacy of the child, and the general reputation of the family, are evidence of his legitimacy, especially after the lapse of thirty years, and after the parents and child are dead. 1 Phil. on Ev. (ed., 1859), 248–253; 1 Bouv. Inst., 130; *Doe* v. *Griffin*, 15 East, 149; *Patterson* v. *Gaines*, 6 How., 550.

*Templin & Fairall* for the appellees, filed an elaborate argument upon the evidence.

WRIGHT, J. — Linus Niles was born in 1811. Sanford Niles married Susan Spooner some two years afterwards, and about the same time Polly married Jonathan Sprague. Linus died in October, 1853; Sanford, in November, 1848; Polly, in February, 1852. It is admitted that Sanford always recognized plaintiffs as his children, and that this recognition was general and notorious.

It will be observed that the material inquiry in this case is, whether Linus was the son of Sanford; and connected with this, and important to its determination, the further question whether Sanford and the mother, Polly, were ever married. And here we reverse the usual order in determining cases, by taking up, first, the motion for a new trial, so far as it applies to the verdict of the jury upon these facts.

The case was tried three times. There is a great amount of testimony on either side, bearing upon the question of parentage. It is all before us. We have carefully examined it, and do not believe the jury erred in their conclusion. If the verdict had been otherwise, we would not have been justified in interfering. The case, upon this matter of fact, is not free from difficulty; but the weight of all the facts and circumstances we think preponderates in favor of defendants' position. The plaintiffs affirm. The burden of proof is upon them. If in this they fail, or if the testimony does not preponderate either way, defendants are entitled to a verdict. Aside from the conflicting evidence which relates to the fact of marriage, or that which bears upon the paternity of Linus, there are some undisputed facts which tend strongly to support this finding. The parents of these parties all lived in the same neighborhood in 1811, and for some years afterward. Linus was born some few months (three or four) after the alleged marriage between Sanford Niles and his mother. Within a year or

two after this, the father married Susan Spooner, and the mother married Sprague, each having knowledge of the other's marriage. And yet there is no evidence, nor is it pretended, that any objection was made to these unions. The parents of each were then living, and interposed no objection. The relations thus formed continued uninterruptedly for near forty years, and until they were determined by death. Some children were born to each, who associated with each other as neighbors and friends. To admit, under such circumstances, that a valid, legal marriage ever took place between the father of plaintiffs and the mother of defendants, would assume a state of society exceedingly demoralized, and a disregard of the marriage relation on the part of the parents and the parties to it, seldom if ever known in a christian community. And if we connect with this the further facts, admitted by plaintiffs, that Sanford never lived with this wife after the birth of the child, and that, at the time of the alleged marriage, as shown by plaintiffs' testimony, he protested, repeatedly and earnestly, that the child to be born was not his, we have facts that weigh heavily against admissions and circumstances to which witnesses testify some forty-five years after their occurrence. If the case turned, therefore, upon these questions of fact, we should not feel justified in disturbing the verdict. These facts were submitted to the jury under instructions, and if these were correct, this case must be affirmed.

Before examining these, however, we will consider whether the court erred in excluding a certificate of marriage offered by plaintiffs. This point is not urged with any confidence by appellants, and it needs no more than a passing notice. An exemplification of a copy of a record is not sufficient under the act of Congress relating to this subject. If the marriage was solemnized, then, under the laws of Ohio, where the marriage took place, it is required that a certificate

of the fact shall be returned by the officiating minister or officer, to the clerk of the county, which is to be recorded. The law requires an exemplification of this certificate, and not an exemplification of the note or memorandum made by the clerk in his records, which in this case seems to have been general, and without attempting to set out the return of the officiating officer. In the rejection of this testimony, we do not think the court erred.

The court, after passing upon the instructions asked by the parties, told the jury that the case had been twice tried, and that it was important that they should agree, if they could satisfy their minds as to the right of the case between the parties. To this suggestion plaintiffs excepted, and now assign the same for error. To this action or remark we can see no just ground of objection. If improper, it was as much so to defendants as to plaintiffs. But it was so to neither. It was not only the right, but the duty of the court, to remind the jury of the protracted litigation, and of the necessity on their part to labor honestly and faith-fully to arrive at a verdict, and thus terminate a controversy which time only tended to make more expensive and embittered. There was no intimation as to how they should decide, but a general remark that they ought to agree, if they could satisfy their minds, as to the right of the unpleasant controversy. And this same thought would have occurred reasonably and properly to any intelligent person, without this suggestion from the court.

The fifteen instructions asked by plaintiffs were given, as well as most of those asked by defendants. These present the law applicable to the facts of the case as claimed by the respective parties, very fully and clearly. Some of those asked by defendants are assigned for error, and these we proceed to notice.

Instruction number three was as follows: "The plaintiffs, in order to inherit the property in controversy, must not

only prove by competent evidence that Sanford Niles and Mary or Polly Ferguson were lawfully married, but must show to the satisfaction of the jury, that Linus Niles was the legitimate son of the said Sanford Niles and Mary or Polly Ferguson, and also that there is no other descendant that impedes the descent; and that unless the evidence in this case shows these three facts, to the satisfaction of the jury, they will find for the defendants." Two objections are urged: 1st, that it requires the jury to determine that the marriage was *lawful*; and 2d, to determine what is *competent* evidence of that fact. It seems to us that the appellants put an improper construction upon the language of the instruction. All of the testimony submitted to the jury was, for the purposes of the trial, competent. They had nothing to do with any other, nor was it any part of their duty to question its competency. It was for them to determine its weight or credibility—what facts were or were not established. The word *competent*, as here used, therefore, we understand to mean *sufficient* or *adequate*, and not that the jury were to determine whether the testimony was legally fit or suitable, or otherwise, to prove the necessary fact or facts.

As to the other point there is more doubt. This instruction, however, is to be taken in connection with all the others. The law is that the child is presumed to be legitimate, though born but a short time after marriage. If born during wedlock, the law presumes legitimacy. If the marriage is voidable, merely, it remains valid until annulled by proper proceedings. The issue of such a marriage are legitimate, and they cannot be bastardized in a collateral proceeding of this character, by showing that the marriage was voidable. And under the law of Ohio, in force at the time of the alleged marriage of these parties, though the marriage was null and void, the issue was not illegitimate. The law, as thus briefly stated, was very fully

and clearly given and explained to the jury in the instructions asked by plaintiff. There is nothing indicating that the marriage (if any) was null. No single fact occurs to us now, upon which such a claim could be based. The parties were each at the time fully competent to enter into the relation with each other. If they were married it was voidable, and this is the most that could by possibility be claimed under the testimony. This being true, the jury could not have misunderstood the law as given to them in the several instructions on this subject, at the request of plaintiffs. The vital issue, however, was, whether there had ever been a marriage in fact. If not, then the child Linus was not legitimate, and his mother, and not the father, would inherit his property. Taken in connection with the other instructions and the above facts, therefore, the words *lawfully married*, in the instruction now under consideration, must be understood as referring to the question whether there ever was a marriage in fact. From the testimony we gather, further, that defendants probably insisted that what plaintiffs claimed as a legal or lawful marriage, was a mere sham, practised upon the parties by third persons, either for their own amusement or to annoy and harass the indignant groom,—that, in a word, it was a counterfeit and not a genuine marriage. We do not say that the testimony sustains this view, but refer to the fact to show the probable purpose of this instruction. If this was all that took place, then there was no lawful marriage, and the legitimacy of the child would not be established.

Another instruction objected to, is this: "Slight evidence of a reputed relationship between Sanford Niles and said Linus, although the same may be accompanied with acknowledgments that said Linus was his son, are not sufficient to establish the heirship of plaintiffs without further deductions of pedigree; and if the jury are satisfied that the evidence shows nothing further than such reputed

relationship and acknowledgments, they will find for defendants." Given and qualified by the court, as follows: "If the jury are satisfied, after a careful examination of all the evidence before them, that Sanford Niles and Polly Ferguson were married; and that said Linus was born of said Polly after such marriage, and has been recognized and treated by them as their child; this would be very strong and convincing evidence that he was the legitimate son of said Sanford."

The connection between the "*qualification*," and the instruction as asked, is not readily perceived. And yet, as we view them, neither are erroneous. There is certainly no improper rule affirmed. The only chance for error is by inferring that they mean more or something different from what is stated. We do not understand the instruction to say that there was only "slight evidence" of the reputed relationship, but that *such* evidence, (if there was no more,) although accompanied, &c., would not be sufficient to establish the heirship of plaintiff. Nor would it. For if there was no marriage between the father and mother, plaintiffs could not inherit, whatever the evidence of relationship, and paternal acknowledgments. True, the presumption is in favor of the legitimacy of the child. True, also, that the marriage might be shown by cohabitation, the conduct and acknowledgment of the parties, common reputation, the testimony of those present at the ceremony, as well as by the record. But these are matters not touched by the instruction. The modification certainly is good law, — for if all the facts should concur, therein supposed, there would remain but little doubt of the legitimacy of the offspring. If the parties were married, Linus was born during wedlock, *and they recognized him as their child*, we should truly have convincing evidence that Linus was the son of Sanford. But this does not assert that such recognition was *necessary* to prove his legitimacy. If it

did, the qualification would most clearly be erroneous. The proposition is that if two things occurred, which of themselves are *prima facie* evidence of the principal fact to be established, and another corroborative fact occurred, then the case made would be quite strong and convincing. And no one will for a moment question the correctness of such a proposition.

The next and last instruction complained of, is this: "The declaration of Sanford Niles and Mary or Polly Ferguson, are competent to establish the legitimacy or illegitimacy of Linus Niles, and such proof is competent to bastardize said Linus so far as the same tends to show that the said Sanford and Polly were never lawfully married; and if the jury believe from the evidence and the declarations of the said Sanford and Polly that they were never lawfully married, they will find for defendants."

If this instruction is to be understood as asserting the broad doctrine, that such declarations are competent to bastardize the issue, then upon authority we should regard it erroneous. Such evidence is held incompetent upon grounds of public policy (11 East., 132; 5 A. & E., 180), or, as Lord MANSFIELD says (Cowp., 594), "it is a rule, founded in decency, morality and policy, that the husband and wife shall not be permitted to say after marriage that they have had no connection, and therefore that the offspring is spurious." He is here speaking, however, of post-nuptial intercourse, and the rule has more particular application to those cases where, the marriage being undisputed, it is proposed by such declarations to establish the non-access of the husband. In the case before us, the capital fact to be established, is the marriage. The declarations of the mother and putative father, introduced in evidence, had reference to or bear upon that fact. And having reference to this testimony, and looking to the whole of the instruction, while it might possibly be mis-

understood, yet we think the fair construction is that such declarations may be received "so far as they tend to show that they were never lawfully married."

As thus understood, we think it was correct. It must be remembered that the testimony tends almost conclusively to show that Sanford and Polly never lived together, never recognized each other as husband and wife. The case is not one, therefore, where parties have lived together for years, treating each other as husband and wife, and where afterwards it is sought to bastardize their issue, by proving their declarations that they were never lawfully married. This child was begotten before, but born after, the alleged marriage. The question to be determined is one of inheritance. If there was a marriage, as claimed by plaintiffs, then the presumption is that Sanford was the father of Linus. But it is a presumption which is not conclusive, and which it is entirely competent to rebut. To obtain a predicate upon which to base this presumption, it was essential to establish the marriage. And we can see no reason, as bearing upon the pivotal point, why the declarations of the mother and putative father, made about and after the birth of the child, are not receivable, even if the effect should be to show the illegitimacy. And as applied to this case, this view finds much to sustain it from the consideration, that if Sanford and Polly were married, then they both violated every law of "decency, morality and policy," when they afterwards entered into the same relation, the one with Susan Spooner, and the other with Jonathan Sprague. And under such circumstances will such laws be more violated by receiving declarations which recognize the validity of these subsequent marriages, or those which convict them of a gross disregard of the proprieties of enlightened, christian society, an entire indifference to the condition of the several children born to them during the admitted wedlock of each, and an utter contempt for the

laws of the land? Such a question cannot be difficult to determine. The judgment is

Affirmed.