## JENKINS v. BARROWS ET AL.

1. **Pleading:** COUNTER-CLAIM: WHAT IS NOT: STRICKEN OUT. A counter-claim, to be sustained as such, must aris e out of the contract or transaction as claimed and alleged in the plaintiff's petition. (Code § 2659) But where an action was against two as partners, and the answer denied the contract as alleged in the petition, and the counter-claim did not admit it, but set up a ca use of action in favor of one of the defendants only against the plaintiff, *held* that it was properly stricken out on motion.

2. **Partnership:** IN OPERATING SALE-STABLE: WHAT IS. Where the testimony tended to show that an expert in buying horses and the owner of a sale-stable were eng aged in operating the stable, the former buying horses in the name of the latter, and for the most part with his money, with the understanding between them that if there were any profits they should be equitably divided, *held* that a finding by a jury that they were partners could not be disturbed on appeal.

3. **Appeal:** PRACTICE: JUDGMENT ON EVIDENCE VARYING FROM PLEADINGS. Where the evidence supports the judgment appealed from, but there is a variance between the evidence and the pleadings, an objection to the judgment cannot, on that account, be first raised in this court.

*Appeal from Clarke District Court*— HON. JOHN W. HARVEY, Judge.

WEDNESDAY, DECEMBER 14.

ACTION to recover for work done, and for horses sold.

There was a trial to a jury, and verdict and judgment were rendered for plaintiff. Defendants appeal.

*Woodbury & White* and *Shinn & Booth*, for appellants.

*McIntyre Bros.* and *H. L. Karr*, for appellee.

ADAMS, CH. J.—The plaintiff alleges that he worked for the defendants, D. C. Barrows and Mosely Chase, as partners, from December 2, 1881, to September 22, 1882, for which there has become due him the sum of $173.33; and, also, that he sold and delivered to the defendants two horses, at the agreed price of $100 each. The defendants denied the allegations of the petition, and the defendant Barrows filed a counter-claim for board of the plaintiff and his horses.

I. The plaintiff moved to strike out the counter-claim, and the motion was sustained. The defendants assign the sustaining of the motion as error. The motion was made upon the ground, among others, that the "counter-claim, as alleged, did not arise out of the contract or transaction, as claimed and alleged in the plaintiff's petition." The defendants do not deny that it should so arise to properly constitute a counter-claim under the statute; (Code, § 2659;) but they insist that the fact is that it did so arise. The plaintiff alleged in his petition that by his contract with Barrows and Chase he was to receive for his services a certain amount of money per month and his board; but the defendants deny this contract altogether in their answer, and do not admit it in pleading their counter-claim. So far, then, as the answer and counter-claim show, it is an independent claim, or new matter, constituting a cause of action against the plaintiff in favor of one of the defendants. In our opinion, the court did not err in striking out the counter-claim.

*1. PLEADING: counter-claim: what is not: stricken out.*

II. The defendants moved for a new trial, on the ground that the verdict is not sustained by the evidence. The court overruled the motion, and the defendants insist that in so doing there was error. Under the instructions of the court, the jury must have found that the defendants were partners, or held themselves out

*2. PARTNER-SHIP: in operating sale-stable: what is.*

as such. They insist that there was no evidence to support such findings. The evidence shows that in December, 1881, the defendant Barrows and one Harrison kept a sale-stable in Osceola; that Harrison owned the horses, and Barrows the stable; that Barrows was an expert in buying horses, and rendered services in that respect. The understanding was that, if there were any profits, Barrows should have such share as would be right. About the first of February, 1882, the defendant Chase bought Harrison out, and the business of keeping a sale-stable was continued. Barrows continued to render services in buying as he had done before, sometimes paying his own money for horses; but the evidence seems to show that the title to the horses was taken in Chase. As to what the arrangement between him and Chase was, the evidence is conflicting. The plaintiff, during the time that Harrison had been interested in the business, had been employed in taking charge of the horses in the stable. After Chase bought Harrison out, the plaintiff continued in the stable, working in the same capacity. The evidence tended to show that in the outset he worked for Barrows & Harrison at the agreed price of $15 per month. At the time Chase bought Harrison out, according to the testimony of the plaintiff, Chase told him that he had bought Harrison's interest in the horses, and that he and Barrows now owned them, instead of Barrows & Harrison, and that the plaintiff was to continue in the same work for him and Barrows, and that he had assumed the contracts of the old firm. The plaintiff testifies that he informed Barrows of what Chase said, and that Barrows replied that that was all right. He also testified that it was agreed afterwards that he should receive, for the future, $20 per month. This is the evidence relied upon in the main to sustain the verdict in respect to the relationship between the defendants; and, while it is rebutted to some extent, we cannot say that the verdict is without support. We may say, also, that we think that the verdict is

not without support in respect to the time the plaintiff was employed, and the wages he was to receive.

The defendants contend that, according to the plaintiff's testimony, he did not work for the defendants during the time for which he was allowed. It is said that he testified that he worked more than two months with one Hanson, moving a house. But he expressly testified that he did not work for Hanson; and he testified, at another time, that he worked for the defendants until September, 1882, with the exception of 19 days. The plaintiff was allowed to recover from December 2, 1881. The evidence did not show that the plaintiff performed labor for the defendants from that time. His labor for them commenced about the 1st of February, 1882. His recovery for labor between December 2, 1881, and the time he commenced working for the defendants, must have been based upon the evidence that he performed labor for Barrows & Harrison, and that the defendants afterwards agreed to pay for it in consideration of his continuing in their service, and by assumption of Barrows & Harrison's debt when Chase bought Harrison out. This, we think, presents a case of variance between the allegations and the proof. The plaintiff sought to recover for a certain amount of labor at an agreed price. The labor and agreed price were proven, (taking the plaintiff's testimony to be true,) and the variance consisted in the fact that the labor was not performed for the defendants as averred. So far as the evidence is concerned, however, a right of recovery was established, and for the amount claimed: but the facts upon which the amount of recovery depended differed in one respect from the facts pleaded. Taking this, then, to be a case simply of variance between the allegations and the proof, the case was to be governed by sections 2686 and 2687 of the Code. Whatever objections the defendants became entitled to raise, cannot, we think, properly be raised for the first time in this court.

It is insisted by the defendants that the verdict was the

*3. APPEAL: practice: judgment on evidence varying from pleadings.*

result of passion and prejudice. Our attention is called repeatedly to the testimony of Barrows and Chase, which upon many points was directly in conflict with that of the plaintiff. Possibly, this court would have found differently upon the facts; but the question as to the credibility of witnesses and weight of evidence was for the jury, and we cannot say that there was such indication of passion or prejudice that we should be justified in disturbing the judgment. We think that the judgment must be          AFFIRMED.