P. H. WARLICK et al. v. J. J. PLONK.

*Insanity—Hung Jury, Instructions to—Statute of Limitations—
Revised Code, ch. 65, § 1; The Code, §§ 148, 163.*

1. In an action of ejectment defendant relied upon adverse possession and the statute of limitations. Plaintiff relied upon the insanity of his ancestor, against whom the land was held adversely, to rebut the plea of the statute. On the question of insanity the Court charged the jury, that if the alleged insane person was so mentally diseased that he was unable to understand and assert his rights, that he did not possess sufficient mental capacity to know' that he was the owner of the land, and that the defendant was in possession thereof asserting title thereto, and that such possession would destroy his rights, then he labored under such disability as would prevent the operation of the statute: *Held,* that the charge contained nothing of which plaintiff could complain.

2. The Judge said to a hung jury, that it was their duty to agree if possible; that no juror, from mere pride of opinion, should refuse to agree, but he was not required to surrender conscientious views founded on evidence; that it was the privilege and duty of each juror to reason with his fellows concerning the facts in the case, with an honest desire to arrive at the truth and a verdict: *Held,* that such charge was free from objection.

3. If land is held adversely to an insane person for such length of time as would bar his recovery if sane, such insane person, or those claiming under him, must commence an action within three years after the disability of insanity is removed, else their right to recover will be barred. Revised Code, ch. 65, § 1; *The Code,* §§ 148, 163.

CIVIL ACTION, tried before *Boykin, J.,* at Spring Term, 1888, of CLEVELAND Superior Court.

The plaintiffs, as heirs-at-law of Christy Eaker, who died in 1885, intestate, derived title to the land sued for, under a grant from the State, and successive intermediate conveyances terminating with their ancestor. The defendant claims it under deeds from one Neal to Alex. Norton, dated in 1847, from Norton to Froneberger, made in 1856, and from the

103—6

latter to himself, executed the same day, and an alleged continuous and adverse possession from the year 1847 to the death of said Eaker. To rebut the effects of this hostile occupation, the plaintiffs introduce evidence to show the insanity of Christy Eaker, and his mental incapacity to understand and enforce and defend his rights in the premises, during an interval of more than fifty years, from 1831 to the time of his death, so that, the present action having been commenced on July 17 of the same year, the running of the statute to protect the defendant's possession has been arrested, and no bar is interposed to prevent the plaintiffs' recovery. The defendant offered testimony in disproof of this contention as to the mental condition of the deceased.

The controversy, in different forms, was tried before a jury at Spring Term, 1888, of the Superior Court of Cleveland, upon issues in which the findings are, that the adverse possession of the premises was in the plaintiffs' ancestor for a period of seven years previous to April 1, 1847, and thereafter for a similar period in the defendant and those from whom he claims.

The essential matter in dispute is, the alleged mental infirmity of the said Christy Eaker, and its effect in saving his rights from the operation of the limitations of the statute, which are in this feature unchanged, as found in the Revised Code, ch. 65, § 1, which exempts persons who are "*non compos mentis*," and in *The Code*, § 163, which exempts such as are "insane," and both allow three years after the person under the disability, "coming of sound mind, during which he may bring his action." Revised Code, ch. 65, § 1; *The Code*, § 148.

The issue of fact involving this question was put in this form :

"Was Christy Eaker mentally incapable, at all times since April 1, 1847, up to seven years prior to his death, of prosecuting and defending his right?" The response was in the affirmative.

The Court charged the jury, that if the said Christy Eaker labored under the disability of insanity during the time between the years 1831 and 1885, the plaintiffs, his heirs-at-law, would be entitled to the verdict, although the defendant had possession and occupied the said land as contended. That if he was so mentally diseased as to be unable to understand and assert his rights, the possession of the defendant could avail him nothing in this action. That if it should be proved that he did not possess sufficient mental capacity to know that he was the owner of the land, and that the defendant was in the possession thereof asserting title thereto, and that if he could not, by reason of mental disease, understand that such possession threatened and eventually would destroy his rights thereto, then, in that event, the plaintiffs would be entitled to recover, inasmuch as their ancestor labored under such a disability as would prevent the operation of the statute of repose.

The defendant excepted to that part of the charge referring to the degree of mental capacity necessary, &c.

The jury remained out an entire night. When Court convened the ensuing morning the jury came into Court, and were asked if they had agreed. They responded in the negative. The Court inquired if the diversity of opinion among them was such, in their opinion, as to render an agreement improbable. A juror responded that they stood nine to three. This was not in response to any inquiry on the part of the Court, as to how the panel then was, on the issue submitted. No such inquiry was made.

The Court then remarked to the jury, that it was their duty to agree, if possible; that no juror, from mere pride of opinion, hastily expressed during the consultation, should refuse to agree; that no juror was required to surrender any conscientious views, founded on evidence, he might entertain concerning the case; that it was the privilege, and, indeed, the duty of each juror to reason with his fellows

concerning the facts in the case, with an honest desire to arrive at the truth, and with the view of arriving at a verdict.

The defendant excepted to the remarks of the Judge to the jury.

The jury retired, and, after further deliberation, returned a verdict for the plaintiffs.

Rule for new trial by defendant. Rule discharged.

Judgment for the plaintiffs. Appeal by defendant.

*Mr. W. P. Bynum,* for the plaintiffs.
*Mr. W. A. Hoke,* for the defendant.

SMITH, C. J. (after stating the case). Without instituting an inquiry into the nature and extent of the disability which gives immunity to persons, thus designated in the statute, from the consequences of delay in bringing suit when their rights of property are involved, we think the instruction of the Judge leaves nothing unsaid or given of which the appellant can complain. Quite as unfounded is his exception to what was said and done when the jury came into Court and announced their failure to agree upon a verdict. The directions given them were entirely fit and proper, as tending to bring about unanimity of opinion, after a full and free interchange of views among the jurors, and to prevent unnecessary mistrials.

But the verdict upon the issue of the insanity of the deceased is imperfect, and leaves undetermined the state and condition of his mind during the seven years next before his death. It establishes the insanity up to the beginning of this period, while the charge explicitly requires a finding of this fact up to the year 1885, and we are at a loss to know why the issue was framed so as not to embrace this additional time. If any inference is to be drawn from this omission as intentional, and not the result of inadvertence, it

would be that the insanity did not continue until death, but that reason was restored during life. If, then, the deceased recovered from this disability, and became of sound mind for a period of three years before the suit was begun, the bar would become complete, and the right to recover the land lost. But the case shows no change of mental condition before death, and the instruction covered the entire period up to death, during all of which a continuance of the unsound mind is made a condition of the plaintiffs' right of recovery.

The discrepancy does not admit of our acceptance of the finding of the issue, as a basis on which to render a final judgment in the cause, and we feel constrained to consider this *lapsus* as an imperfection in the form of the issue tendered, and followed by a corresponding imperfection in the finding of fact, the correction of which can be made only by sending the cause back, to the end that a proper issue be submitted to the jury.

The judgment must be reversed, and a new trial had, and it is so adjudged.

Error. *Venire de novo.*