NETTIE ARMSTRONG, Appellee, v. JAMES & Co., ELIAS JAMES, MINERVA JAMES and ONA DAVIS, Appellants.

**Pleadings:** COUNTERCLAIM. A counterclaim based upon a cause of action not matured when the action in which it is pleaded was commenced should be stricken on motion.

**Instructions:** URGING AGREEMENT BY JURY. The court is not warranted in attempting by instructions to coerce the jury into agreeing upon a verdict, but if after deliberating for some time they are apparently unable to agree the court may properly admonish them of the desirability of an agreement if it can consciously be reached; and in doing so may suggest the expense incident to a disagreement; the state of the public business; that they ought to examine the issues with candor and deference for the opinions of each other; that a difference of opinion should cause the minority to doubt the correctness of their own judgments, and cause them to re-examine the evidence and the ground of their opinions; and that the jury room is no place for exhibiting pride of opinion or espousing either side of the case in a spirit of controversy. The instruction in the instant case, while approaching the limit of the court's discretion, is held not to require a reversal.
Weaver, J., dissenting.

*Appeal from Poweshiek District Court.*—HON. B. W. PRESTON, Judge.

SATURDAY, JUNE 8, 1912.

ACTION to recover a sum of money paid under duress. Trial to a jury. Verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*J. H. Patton* for appellants.

*Bray & Shifflett* for appellee.

DEEMER, J.—Plaintiff claims that defendants by fraud and duress and threats of imprisonment induced her to pay them the sum of $92, which amount she seeks to recover in this action. Defendants interposed a general denial, and also pleaded that the amount paid them was by way of settlement of a debt justly due them from plaintiff. Some time after suit was commenced one of defendants, to wit, Elias James, filed a counterclaim against the plaintiff for maliciously prosecuting him for the crime · of maliciously threatening to accuse plaintiff of a crime. It is alleged that the prosecution ended with an acquittal of said defendant on September 26, 1910, which was something like two months after plaintiff commenced this action. Plaintiff moved to strike this counterclaim, and her motion was sustained. Upon the issues joined, the cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $100.27. Defendants appeal.

I. Complaint is made of the ruling on the motion to strike. As the counterclaim was on behalf of one of the defendants only, and as the prosecution complained of was not ended until after plaintiff commenced her action, and the defendant's cause of action had not matured when the suit was commenced,

1. PLEADINGS: counterclaim.

the ruling on the motion was manifestly correct. Code, section 3570; *Jenkins v. Barrows*, 73 Iowa, 438; *Bank v. Jennings*, 89 Iowa, 230.

II. The verdict has such support in the testimony that we are not justified in interfering therewith.

III. The jury went out on November 15, 1910, and, failing to agree, they were called into court about 9 o'clock a. m. on the 16th, and the following occurred as shown by the record:

Court: Gentlemen of the jury, you have been out now about fifteen hours, and I will be glad if the court can help you. What is the trouble?

Foreman: Your Honor, we have not been able to agree. We have considered the evidence in every possible way that we can, and there seems to be a difference of opinion.

Court: Is there any trouble, Mr. Foreman, with reference to the instructions? A. I can't see any.

Court: I would like to know how you stand. Just a moment. I don't want to know how many on one side or how many on the other—that is, I just want the figures, whether six to six; four to eight; seven to five. Give me the numbers without telling me on which side each number is.

Foreman: Eight to four. Q. How long have you been that way? A. Since the first ballot.

Court: You will understand that the court has no right to express an opinion at all. If I did, it would be reversible error, and the Supreme Court would reverse the case, because, that is a question for the jury. The court has no right to instruct the jury except in writing. The court has prepared an additional instruction, which I will read to you:

Additional Instruction. You have now been out about fifteen hours deliberating on a verdict without being able to agree. Of course, the main thing in the trial of this lawsuit, as in any other, is to arrive at the right thing and to do justice between the parties; but, I want to put this matter up to you plainly, and ask you to go over some figures with me to show you the importance of your agree-

ing on a verdict. The court is entirely powerless, and it
is up to the jury alone. The judgment of the court is that
it would be better for both parties to this suit for you to
agree on a verdict one way or the other. But there are
other parties that are interested, and I want you to think
of these propositions. We have about thirty jurors at
$2.50 per day. All of these are not on this jury, but are
waiting at the expense of this county and the taxpayers.
It has already taken two days to try this case, and you will
have to count another day, to-day, because it is not likely
that we can get a jury in another case so that we should
figure three days at expense of $75 per day for jury fees
alone, besides other court expenses, attorney's fees, etc.,
and a disagreement by you and a retrial will, of course,
double these expenses; besides, the next case for trial is
a state case, where there are fifty or sixty witnesses that
must in all probability be paid by the county, so that I
ask you, in view of all these things, that you redouble
your efforts to agree upon a verdict, and treat this as
a business proposition without any levity or anything of
that kind. The issues of fact are not complicated, nor is
the law difficult. It seems to the court that you ought to
agree. All the jurors should examine the issues submitted
to you with candor and with a proper regard and deference
for the opinion of each other. A proper regard for the
judgment of other men will greatly aid us in forming our
own. This case must be decided at some time. You jurors
have been selected in the same manner that any future
jurors will be, and there is no reason to believe that any
jury better qualified will be chosen, or more or clearer
evidence will be adduced. Every juror should listen to
the arguments of the other jurors with disposition to be
convinced by them. If the jurors differ in their views
of the evidence from the larger number of their fellow
jurors, such difference of opinion should induce the minority
to doubt the correctness of their own judgments, and
cause them to scrutinize the evidence more closely and to
re-examine the grounds of their opinions. Your duty
is to decide the issues of facts which have been presented
to you, guided by the instructions of the court as to the
law, and arrive at a verdict if you can conscientiously do
so, and in conferring together you should bear in mind

that the jury room is no place for pride of opinion, nor for espousing and maintaining, in a spirit of controversy, either side of a cause.

In ruling on a motion for a new trial, which had for one of its assignments the giving of this additional instruction, the court made the following record upon defendants' request to examine some of the jurors to show that they were coerced into an agreement:

The court declines to hear the testimony for the reason that it is the court's idea that it is a matter which inheres in the verdict, and the jurors could not be permitted to say now that they did not follow the instructions of the court. The fact is that the amount in controversy is small; that Montezuma is an out of the way place, that is, a place hard to get to, and, there being a large number of witnesses and jurors in attendance, the court was anxious to get a verdict in this case, and, there being no complicated questions of either law or fact, it seemed to the court that the jury should agree one way or the other without any trouble. The jury retired for deliberation Tuesday, November 15th, about 5:45 p. m., and were out all night, and on the morning of the 16th, about 9 o'clock, the court called them into court and gave them the first additional instruction, that being the long instruction, where the court urged them to get together, if they could. After the jury had retired again, after one additional instruction was read, the bailiff came to the court and said the jury wanted a dictionary, which the court declined to authorize. They then sent to the court, by the bailiff, the note attached to the second additional instruction, asking for a more specific definition of duress. The court prepared an additional instruction, which, by agreement of both parties, was sent to the jury by the bailiff, without the jury being called into court. This was about 11 o'clock on the morning of the 16th of November. A few minutes before 12:00 o'clock, on the 16th, the court told the bailiff to bring the jury into court, and was about to discharge them as we were then just impaneling another jury in the next case, and there were not enough other jurors to impanel the jury. The jury sent word to the court that, if the court

would give them a few minutes longer, they thought they would agree, and after lunch, and about 1:30 p. m., the jury returned the verdict, which was entered.

The second additional instruction referred to in these last quoted remarks in response to the jury's request for a more explicit definition of the word "duress" reads as follows: "In response to your written communication you are further instructed that definitions of 'duress' are, 'hardship'; 'constraint'; 'pressure.' Legally it is a state of compulsion or necessity in which a person is influenced by threats, menaces, and the like to do an act which is not the free will of such person, but whose will is overcome thereby. Read this instruction in connection with the other instructions given you."

These instructions, remarks, and proceedings are very strongly challenged, and it is insisted that they had the effect of coercing a verdict which would not otherwise have been rendered. Conceding that these in-

2. INSTRUCTIONS:
   urging agree-
   ment by jury.

structions go to the verge of propriety, we are not disposed to reverse because thereof. The instruction complained of did not result in an immediate verdict. On the contrary, the jury retired, and, after reconsidering the case for a number of hours, came back into court for a more explicit instruction as to what was meant by duress. An instruction was given pursuant to this request, and very shortly thereafter a verdict was returned. If there be any presumptions about the matter, it is quite logical to infer that this additional and final instruction is the one which brought the verdict. The request from the jury for this additional instruction clearly indicates that they were considering the merits of the case, and had got at the very vitals thereof. The instruction was responsive to the request, and of it no complaint is made. Doubtless it had the effect of convincing all the jurors as to the real merits of the controversy. The jurors were told, in effect, that no verdict should be returned

unless they could conscientiously agree, and we must infer that they followed this admonition. Of course, we should not return to the harsh methods of the common law in inducing verdicts from jurors. They should not be kept without food, water, fire, or candle until they agree, nor should they be hauled from one town to another about the circuit subject to contempt and ridicule because they do not agree before the term closes, as was the rule at common law. Indeed, under modern practice, they should not be threatened or coerced into agreeing to a verdict. But it is common knowledge that jurors, like other human beings, become stubborn, forget, or overlook the facts of a case, refuse to listen to the arguments of their fellow jurors, or to be governed by the testimony. An opinion hastily formed upon insufficient reflection is sometimes adhered to without other reason than that, having been once expressed, it must be adhered to. Again, jurors sometimes hang upon collateral and inconsequential matters which when fully explained yield to weightier and more direct facts. Stubbornness is often responsible for mistrials, and it is the duty of the presiding judge to secure verdicts, if possible. He is, or should be, something more than a mere moderator. He is the presiding genius of the trial, and, if he becomes convinced that jurors are working to no purpose, that they have forgotten their functions, or are failing to give the case proper consideration, it is his duty to set them right, and by proper instructions bring them to a realizing sense of their duties and responsibilities. As reasons for agreeing, it has been held that the court may properly remind the jury of the expense to the county and to the state; *Clinton v. Howard*, 42 Conn. 294; *Kelly v. Emery*, 75 Mich. 147 (42 N. W. 795); *Watson v. R. R.*, 53 Minn. 551 (55 N. W. 742), to the parties; *Burton v. Neill*, 140 Iowa, 141; *Delmonica Co. v. Smith*, 112 Iowa, 659; *Covington v. Bostwick* [Ky.] (82 S. W. 569), the number of times the case has been

on trial (*Niles v. Sprague*, 13 Iowa, 198), the length of time consumed in the trial; *Shely v. Shely* [Ky.] 47 S. W. 1071; *Phoenix Co. v. Moog*, 81 Ala. 335 (1 South. 108), the importance of the case (*Allen v. Woodson*, 50 Ga. 53), the necessity of a decision by some jury; *Delmonica Co. v. Smith*, 112 Iowa, 659; *Nickles v. Seaboard Co.*, 74 S. C. 102 (54 S. E. 255), and the probability of their being able to decide the case as well as any other jury; *Austin v. Appling*, 88 Ga. 54 (13 S. E. 955); *Shely v. Shely* [Ky.] (47 S. W. 1071). The court may also properly advise the jury that, while they should not surrender any conscientious opinion founded on the evidence, they should lay aside all pride of opinion; *Burton v. Neill*, 140 Iowa, 141; *Warlick v. Plonk*, 103 N. C. 81 (9 S. E. 190), that each juror should re-examine for himself the grounds of his opinion (*Frandsen v. R. R.*, 36 Iowa, 372), and consider their differences in a spirit of fairness and candor (*Burton v. Neill*, 140 Iowa, 141), with an honest desire to arrive at the truth and with the view of arriving at a verdict; *Covington v. Bostwick* [Ky.] (82 S. W. 569). Again, it is within the court's discretion to direct a jury to hasten its verdict. *Roach v. Tie Co.* (Ky.) 71 S. W. 2. It has been held not improper to instruct the jury that if one or two of the jury differed in their views of the evidence from the others they should be thereby induced, although not required to surrender conscientious convictions, to doubt the correctness of their own judgment, and should be led to inquire whether they were not mistaken; *Gibson v. Minneapolis, etc., R. Co.*, 55 Minn. 177 (56 N. W. 686, 43 Am. St. Rep. 482), or that "the fact that a juror finds his judgment opposed to the judgment of a majority of the panel ought to induce him, as a reasonable man, so far to doubt the correctness of his own views as to weigh carefully the opinions of his associates, and the arguments and reasons upon which they are founded; and if, upon due consideration, he is convinced that they are probably

right and he is in error, it is his duty to agree with them"
(*Ahern v. Mann,* 60 N. H. 472, 473).

This whole matter is ruled by *State v. Richardson,*
137 Iowa, 591, wherein we said:

The jurors retired for deliberation May, 10, 1907, at
4:15 o'clock p. m.   On the following morning at 9:10
o'clock a. m., they were called into court, and at their
request some evidence read to them by the official steno-
grapher.   The court then *sua sponte* gave them an instruc-
tion to the effect that the law required a unanimous verdict,
that, while this verdict must be the conclusion of each
juror and not a mere acquiescence in that of other jurors
to reach an agreement, it was necessary for 'all the jurors
to examine the issue submitted to them with candor and a
proper regard and deference to the opinion of each other.
A proper regard for the judgment of other men will greatly
aid us in performing our own;' that the case must be decided
some time; that the jurors had been selected in the same
manner any future jury would be, and there was no reason
to think a jury better qualified would ever be chosen or
more or clearer evidence ever be adduced; that 'every
juror should listen to the arguments of other jurors with
a disposition to be convinced by them, and, if any of the
jury differ in their views of the evidence from a larger
number of their fellow jurors, such difference of opinion
should induce the minority to doubt the correctness of
their own judgments, and cause them to scrutinize the
evidence more closely and to re-examine the grounds of
their opinion.   Your duty is to decide the issues of fact
which have been submitted to you, if you can conscientiously
do so.   And in conferring together you should bear in mind
that the jury room is no place for pride of opinion, nor
for espousing and maintaining a spirit of controversy on
either side of a cause.'   This instruction is substantially
like that approved in *Commonwealth v. Tuey,* 8 Cush.
(Mass.) 1, *State v. Smith,* 49 Conn. 376, 386, and *Allen v. U.
S.,* 164 U. S., 492 (17 Sup. Ct. 154, 41 L. Ed. 528).   To these
may be added as tending to sustain it *Niles v. Sprague,*
13 Iowa, 198, approving of an instruction that it was
important that the jury agree.   *Frandsen v. Railway Co.,*
36 Iowa, 372, that there should be a reasonable prospect

of agreement, that it was the 'duty of each juror to lay
aside all pride of judgment and carefully review the ground
of his opinion, and that the jurors should return to their
rooms and examine their differences in a spirit of fair-
ness and candor; *Delmonica Hotel Co. v. Smith*, 112 Iowa,
659, that the case must be determined by some jury and
on the same pleadings and evidence, and that a disagree-
ment would add to the burden of the successful party; *State v.
Tripp*, 113 Iowa, 698, admonishing the jury of the desir-
ability of a verdict, and advising them as to the proper
manner of reaching it and the necessity of abjuring pride
of opinion.   In the last case the instruction was said to be
'in letter and spirit like one often given when a jury seems
to be working to no purpose.'   Like instructions have been
approved elsewhere.   Thus in *Warlick v. Plonk*, 103 N.
C. 81 (9 S. E. 190), an instruction admonishing the jury
of its duty to agree, that no juror from mere pride of
opinion, hastily expressed, should refuse to agree, nor, on
the other hand, should he surrender any conscientious views
founded on the evidence, that it was a duty of each juror
to reason with his fellows concerning the facts with an
honest desire to arrive at the truth and with a view of
arriving at a verdict.   In *Jackson v. State*, 91 Wis. 253
(64 N. W. 838), an instruction was approved saying that
it was the duty of each juror 'to give careful considera-
tion to the view his fellow jurymen have to present upon
the testimony in the case.   He should not shut his ears,
and stubbornly stand upon the position he first takes, re-
gardless of what may be said by the other jurors.   It should
be the object of all of you to arrive at a common conclu-
sion, and to that end you should deliberate together with
calmness.'   .  .  .   The instruction ought not to be criti-
cised for emphasizing the duty of the jurors to show defer-
ence to the opinions of each other.   This is a rule
constantly recognized in every relation of life, and especial-
ly in the administration of justice.   Courts are continually
revising or modifying their judgments as a result of the
light thrown upon the subjects involved by the decisions
of other tribunals.   A great aid to reaching just conclu-
sions is always to be found in weighing and criticising
the opinions of other men.   The fact that one finds him-
self differing from the majority of his associates should

compel him to pause and examine the ground of his own opinion. Of course, in doing this, he ought not to abandon his own conclusions if convinced of their correctness, and the jury was so cautioned in the instruction given; on the other hand, the jury room, as said, is no place for mere pride of opinion, or for maintaining in the spirit of controversy either side of a cause. The aim ever to be kept in view is the truth as it shall appear from the evidence examined in the light of the instructions of the court. Nothing in the language of the instruction could have been construed otherwise by the jury. The object of giving it was to impress the jurors with the necessity of agreeing upon a verdict, and to lead them to a fair and unbiased examination of the evidence before them. They had been out seventeen hours and this alone exonerates the court of any charge of having abused his discretion in urging upon them, on his own motion, the necessity of agreeing in a verdict. *State v. Hale*, 91 Iowa, 367; *Allis v. U. S.*, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91. A verdict was returned at 11 o'clock in the evening of that day, and this clearly indicates that they were not misled in the instruction.

This case was followed in *Burton v. Neill, supra,* opinion by McClain, J., and in *State v. McGhuey*, 153 Iowa, 308, opinion by Sherwin, J.

As already indicated, the instruction complained of did not of itself hasten the verdict. It did not come until the additional instruction was given, and the record shows that the court was about to discharge the jury when the foreman sent word that, if they were given a little more time, he thought they could agree. After waiting an hour and a half, they did agree and came in with the verdict. The authorities cited sustain each and every remark made by the trial court. We do not overlook the fact that some courts have condemned such an instruction. *Goodsell v. Seeley*, 46 Mich, 623 (10 N. W. 44, 41 Am. Rep. 183); *Cranston v. Railroad*, 103 N. Y. 614 (8 N. E. 500); *Miller v. Miller*, 187 Pa. 572 (41 Atl. 277); *Sargent v. Lawrence*, 16 Tex. Civ. App. 540 (40 S. W. 1075). But

in each of these the language used was somewhat stronger than in the case at bar. While the instruction goes to the limit, it is the general consensus of opinion among courts that, on account of the necessary discretion lodged in the trial court in such matters, no reversal should be predicated upon the giving of such an instruction in the absence of other grounds for reversal. Indeed, it finds support in our own cases which have already been cited, and, while not to be approved as a general proposition, we see no reason for reversing on this ground alone.

Finding no prejudicial error, the judgment must be, and it is, *affirmed*.


WEAVER, J. (dissenting). I dissent from the approval of the additional instruction given the jury. Each party to a jury trial is entitled as a matter of fundamental right to have each issue of fact determined by a unanimous verdict which has the intelligent independent assent of each member of the panel. The instruction by inference, if not by express words, is calculated to impress jurors with the idea that each is in duty bound to yield his private judgment to the voice of the greater number, and thus to establish the rule of majority verdicts. The precedents cited in the majority opinion are nearly all cases in which the trial courts have approached dangerously near the exclusive province of the jury, but exceptions thereto have been overruled, not as much in approval of the instructions, as because of the fact that, under the peculiar circumstances of the individual cases, no prejudice to the appealing party could be presumed. The chief trouble with the majority opinion is in the fact that it collects all these inconclusive decisions and marshals them in a manner to invite trial courts to still further incursion into a field which by statute and by the common law from time immemorial has been held to belong to the jury alone. On this ground I would reverse the judgment appealed from.