WOODALL *v.* WILKERSON.

5-2267                                    342 S. W. 2d 405

Opinion delivered January 30, 1961.

*H. M. "Ted" McCastlain* and *Fred MacDonald,* for appellant.

*Howard & McDaniel,* for appellee.

J. SEABORN HOLT, Associate Justice. This is an action to enjoin certain acts of trespassing on property located in the City of Jonesboro. Harry Woodall [appellant] and his wife were married on January 9, 1916. Several years after marriage, Mrs. Woodall inherited a number of parcels of land from her father and mother, both of whom died intestate. In 1934 title to the land in question was acquired by Mrs. Woodall from the other heirs at law. In 1958, Mrs. Woodall died and surviving her were her husband and three daughters, all of whom are the present appellants. Mrs. Woodall, at the time of her death, was insane and we think the undisputed evidence shows that she had been mentally incompetent since the birth of her youngest child, in 1925, when she suffered a mental breakdown.

Shortly after his wife's death, Mr. Woodall went to Jonesboro and requested appellee, Wilkerson, to remove a fence upon land which Woodall claimed. When appellee refused to remove the fence, suit was filed by Woodall praying for an injunction to prevent trespassing upon the property by appellees. A trial was had and the trial court found that appellees had acquired the land in

question by adverse possession. The appellants have appealed and for reversal contend that adverse possession cannot run against one who is non compos mentis.

We have concluded that appellants are correct in this contention and that the decree must be reversed for this reason. After a careful review of the record presented, we hold it conclusively shows that Mrs. Woodall, Harry Woodall's wife, was mentally incompetent during the entire time on which appellees are relying for the ripening of their claim of title by adverse possession. It appears undisputed that Mrs. Woodall became mentally incompetent at the time she gave birth to her last child in 1925 and was at all times thereafter insane till her death in April of 1958. She lived in her husband's home in Brinkley, Arkansas under constant care till her death.

The record reflects that appellees, in 1942, moved into a house adjacent to and just west of the lot, or property, in question here, purchasing it in 1944, and therefore any claim of adverse possession by appellees would have to begin to run after 1942, after appellees moved into the adjoining house. The evidence on Mrs. Woodall's mental condition from 1925 up to the time of her death in 1958 may be summarized as follows:

Dr. Ed McKnight——Knew Mrs. Woodall thirty years as family physician; without doubt she was incompetent from the time her last baby was born in 1925 until her death in 1958.

James B. Sharp, attorney——Knew Mrs. Woodall more than thirty years; she was non compos mentis all that time; unable to take care of children or herself; never engaged in normal activities; was not capable of handling any business.

Mrs. C. W. White——Knew Mrs. Woodall 15 or 16 years; lived next door; she was incapable of handling any business or everyday affairs; could not carry on conversation.

Dr. M. L. Dalton——Knew Mrs. Woodall and was the family physician from 1935; she was legally non compos mentis; testified in probate court that she was incompetent when guardian was appointed.

We find no testimony that contradicts the above. Arkansas Statutes, § 37-101, provides: "No person or persons, or their heirs shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven (7) years next after his, her or their rights to commence, have or maintain such suit shall have come, fallen or accrued: and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven (7) years next after title or cause of action accrued, and no time after said seven (7) years shall have passed. Provided, if any person or persons that are or shall be entitled to commence and prosecute such suit or action in law or equity be or shall be at the time said right or title first accrued come or fallen within the age of twenty-one (21) years or non compos mentis, that such person or persons, his, her or their heirs, shall and may, notwithstanding said seven (7) years may have expired, bring his or her suit or action, so as such infant or non compos mentis, his, her or their heirs, shall bring same within three (3) years next after full age, or coming of sound mind. Provided, also, that no cumulative disability shall prevent the bar hereby formed and constituted by the saving of this section. * * *"

As pointed out, since Mrs. Woodall was mentally incompetent when appellees came into possession, and continuously incompetent until her death, therefore, adverse possession could not run against her. "* * * the rule would seem to be that in actions of ejectment brought by the heirs of one alleged to be insane against a defendant who pleads adverse possession, it devolves upon the heirs to show that the insanity of their ancestor prevented him from understanding his rights, and that, owing to the diseased condition of his mind, he permitted others to assert ownership and acquire prescriptive title to his real estate; and that during the running of the

statute he had no lucid interval of sufficient duration to enable him understandingly to investigate his business affairs and acquire knowledge of the fact of such adverse possession, and that it would ripen into a title in the occupant. In the case of *Warlick* v. *Plonk,* 103 N. C. 81, 9 S. E. 190, the supreme court of North Carolina held an instruction without error which charged the jury in a case similar to the one at bar 'that if the alleged insane person was so mentally diseased that he was unable to understand and assert his rights, that he did not possess sufficient mental capacity to know that he was the owner of the land, and that the defendant was in possession thereof asserting title thereto, and that such possession would destroy his rights, then he labored under such a disability as would prevent the operation of the statute.' In our view of the case at bar, the material inquiry is, was the mind of John Irwin, between January 1, 1880, and June 18, 1884, in such a diseased condition that he did not understand that he owned the land in question, and that plaintiff in error was in adverse possession, and that such possession would deprive him of his legal title to the premises unless he took steps to prevent such result. This is the question that plaintiff in error was entitled to have answered by the verdict of the jury, and the instructions should have so framed the issue that the verdict of the jury would have been an answer," *Clarke* v. *Irwin,* 63 Neb. 539, 88 N. W. 783. See also *Arrington* v. *McLemore,* et al, 33 Ark. 759.

Accordingly, the decree is reversed and the cause remanded.