# IN THE SUPREME COURT OF IOWA

No. 19–0453

Submitted November 16, 2021—Filed May 27, 2022

**STATE OF IOWA,**

    Appellee,

vs.

**ETHAN LANDON DAVIS,**

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Appanoose County, Myron K. Gookin, Judge.

Defendant seeks further review of a court of appeals decision rejecting his challenge to jury instruction on reasonable doubt and instruction to break a jury deadlock. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, McDonald, Oxley, and McDermott, JJ., joined. Appel, J., filed an opinion concurring in part and dissenting in part.

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy (argued), Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Louis S. Sloven (argued) and Scott D. Brown, Assistant Attorneys General, for appellee.

**CHRISTENSEN, Chief Justice.**

On further review from the court of appeals, we decide to address two jury instructions provided by the district court after evidence was presented in a murder trial. First, we decide whether a jury instruction that explains reasonable doubt in terms of "hesitate to act" should have been added to a jury instruction that already contained an explanation of reasonable doubt in terms of "firmly convinced." Second, we decide whether a verdict-urging instruction improperly coerced the jury verdict.

The "hesitate to act" formulation of reasonable doubt is a legally adequate instruction on reasonable doubt. However, we determine the inclusion of "hesitate to act" language was not legally required because it would not have amplified the concept of reasonable doubt already present in the trial court's "firmly convinced" instruction. Therefore, the district court did not abuse its discretion by refusing to add the discretionary "hesitate to act" instruction.

The verdict-urging instruction lacked content that we have previously disapproved of in past caselaw. The timing of the verdict from the verdict-urging instruction indicates that the jury adequately considered the case. Each member of the jury was polled and indicated that guilty was indeed their verdict. Therefore, the content and circumstances indicate that the jury was not improperly coerced by the court's verdict-urging instruction.

**I. Facts and Procedural Background.**

The defendant, Ethan Davis, lived with his parents and brother on a 400-acre family farm near the Wayne-Appanoose county line in Promise City in

2017. Davis was the parent of a one-and-a-half-year-old son with his ex-girlfriend. Davis thought their son would be with him starting on Thanksgiving Day 2017 through the weekend, but he learned the day before that his ex-girlfriend did not agree to such an arrangement. On Thanksgiving Day, Davis drove around Moravia, Centerville, and Promise City before visiting his friend Joseph Babbitt that evening in Plano. Babbitt described Davis as upset because of a recent breakup, losing his job, and the situation with his child. Davis returned to his parents' home at about midnight.

The next day (Friday), Davis left his parents' place to buy cigarettes at a Casey's in Seymour. As Davis left the Casey's, he noticed his ex-girlfriend's car outside the house of her new boyfriend, Jarvis Kennebeck. Davis entered Kennebeck's home, "fired a round into the air" from the 9 mm gun he generally carried, and took his son and left. The ex-girlfriend called 911 to report the incident at 11:42 a.m.

With his child in tow, Davis headed back to the family farm, taking gravel roads to avoid law enforcement in case police were looking to arrest him for what he had done at Kennebeck's home. Davis tried dropping off his son at his parents' home, but no one was there. He also traveled to find other friends and family, but no one was home.

Eventually, Davis ended up at the house of Babbitt, who was home. According to Babbitt, Davis drove erratically into Babbitt's backyard. This was not normal behavior. It was clear to Babbitt that Davis was "pretty upset" when he arrived. Specifically, Babbitt noticed Davis was fast-talking and had been

crying. Davis left his sleeping child on Babbitt's living room floor and scribbled down his mother's phone number for Babbitt. Davis then quickly fled the house at about 1:05 p.m. and Babbitt called Davis's mother. This was the last time anyone claimed to have seen Davis until approximately 5:00 p.m. the next day (Saturday).

Not too far away, Curtis Ross began his Thanksgiving weekend. Davis and Ross had never met before. Ross was an avid hunter from northwest Iowa who traveled to Lucas to bow-hunt deer in Appanoose and Wayne counties. He spent Thanksgiving night with a friend, William Tyler Jensen, at Jensen's home in Lucas. Ross and Jensen had been hunting friends for five or six years. The two regularly communicated with each other through calls, texts, and Snapchat.[1]

In the early morning hours on the day after Thanksgiving (Friday), the two friends separately left Jensen's home to hunt in different areas. Jensen was the first to return home to take a nap after his early morning hunt at around 10:00 a.m. Soon after, Ross returned as well. The two discussed how Ross planned to go hunting that afternoon at a place he fondly referred to as "Narnia," a public hunting ground located near the border of Appanoose and Wayne counties. Jensen saw Ross leave his house around noon. This was the last time Jensen saw Ross alive.

---

[1]Snapchat is a social media application that allows individuals to send pictures, videos, and messages (colloquially known as "Snaps") to other individuals with a Snapchat username. A Snapchat username is a handle that is unique to an individual's account. Snaps have time stamps that indicate when the sender sends a message and when the receiver opens the message.

Ross sent a Snap to several individuals on Friday at 1:26 p.m. This Snap was a picture of his hunting gear with a text that said, "It's going to be a long walk outta here." This was the last Snap communication sent by Ross. Donna Westphal, another one of Ross's friends, sent Ross a Snap shortly afterward. This Snap was opened at 1:38 p.m. But starting at 1:59 p.m., Snaps sent to Ross's Snapchat account were not opened. The last cell phone ping[2] to Ross's phone was at 3:31 p.m. In between this time period, around 2:30 p.m., Kenneth Brown was washing his work truck near the same public hunting ground where Ross was supposedly hunting when he heard several ringing, rapid-fire gunshots. The shots persisted for several rounds and sounded so close that Brown took cover.

Jensen attempted to communicate to Ross through text message around 3:30 p.m. and Snapchat around 3:50 p.m. Ross did not respond. Jensen attempted to make contact with Ross again at 11:30 p.m. when he had not returned to the house. Jensen again received no response and he began to worry. He checked for Ross at a local bar that Ross had been to when in the area, but Ross was not there.

Jensen's search for his friend continued into the early Saturday morning hours. At about 1:00 a.m., he arrived at the entrance to the public hunting ground where Ross told Jensen he would be hunting. Jensen spotted Ross's vehicle at the end of a road where it abuts into a lake, but Ross was nowhere to

---

[2]A ping involves a message sent to the cellular device through a signal tower. A signal is then returned to the tower with the device's location.

be seen. Jensen shouted Ross's name into the woods but heard nothing in response.

At this point, Jensen called the Appanoose County Sheriff's Office to report Ross as missing, and a law-enforcement-led search soon began. Jensen and law enforcement officers attempted to search the public hunting area for a couple of hours, which proved to be difficult because it was dark and densely wooded. At 8:00 a.m., Wayne County Sheriff Officer Cody Jellison was shielding his eyes from the sun when something caught his eye in a nearby creek. Upon closer observation, the eerie sight appeared to be a naked human body, obviously deceased, submerged in the middle of the creek. The body was later confirmed to be Ross.

Upon removing Ross's body from the water, it was clear that his body had been mutilated. The medical examiner who performed the autopsy testified that Ross had been shot at least ten times, had five sweeping incise wounds, and twenty-six plunging stab wounds. Stippling, an indicator of being shot at close range, was noticed, burned into the left side of Ross's face. Many of his stab wounds were four to six inches deep. There were four extensive incise wounds carved into his legs, one on each thigh and one on each calf. Vital organs were damaged such as the liver, kidneys, diaphragm, lungs, and intestines. One particularly serious stab severed his carotid artery and another incise wound severed his femoral artery. Some of the injuries were determined to have occurred before death, some at the time of death, and some after death. It was unclear which specific wound was the fatal shot, stab or incise. However, it was

clearly evident that several of the shots or cuts would have been fatal on their own.

A massive evidence collection effort began at the creek with the collaboration of law enforcement from the Appanoose and Wayne county sheriff departments, the Department of Natural Resources, and the Department of Criminal Investigation (DCI). Officers canvassed the surrounding area after locating Ross's body. They observed small areas of blood in the water near the body. Hanging onto a rope, officers lined up side by side and slowly walked the creek in an effort to gather any evidence floating or submerged in the creek. The areas surrounding the creek were photographed and processed for evidence.

Although neither Ross's clothes nor any other personally identifiable evidence was ever found during the search, other evidence was gathered. The officers found several 5.56 mm and .223 mm shell casings located in two areas near the murder—one casing near a grassy bloody area determined to contain Ross's blood and four casings located on a hilltop overseeing the grassy bloody area and the creek. While standing on that same hilltop where the shell casings were found, law enforcement noted that there was a line of sight to where Ross's body was found as well as where the other shell casings were found in the grass.

Nearby the crime scene, officers discovered an ammunition can stashed in a rusty old refrigerator and multiple gun magazines, some loaded with ammunition, concealed inside a culvert. The ammunition can contained loose ammunition including 5.56 and .223 ammunition. The gun magazines contained .223 rounds with green polymer tips. According to the officers, 5.56 and .223

ammunition are the type of ammunition typically used with an AR-15 rifle. The ammunition can and gun magazines were immediately sent to the DCI lab for analysis.

A couple of days later, the forensic analysis identified Davis's fingerprints on the ammunition can and on some of the gun magazines. Based on the fingerprint evidence and a report from Davis's ex-girlfriend that Davis owned an AR-15, officers obtained a search warrant and conducted a search of the Davis family farm, which was two and a half miles away from the crime scene. Among other evidence, during that search, officers uncovered an AR-15 hidden under a parked hay mower. This AR-15 was later identified as purchased by and owned by Davis.

At the DCI lab, the AR-15 was carefully analyzed for fingerprints and DNA. Reddish spots on the AR-15 scope were identified as Ross's blood. The AR-15 butt plate also had blood on it, which was also identified as Ross's blood. In addition to Ross's blood, Davis's fingerprints were identified on the AR-15. The shell casings found near the crime scene were identified as having markings specific to the same AR-15.

Davis was charged with first-degree murder to which he entered a plea of not guilty. A six-day jury trial occurred in early February 2019. At the trial, Davis testified in his own defense as to what happened between 1:05 p.m. Friday and 5:00 p.m. Saturday on the Thanksgiving weekend of 2017. He claimed that he never entered into the public hunting grounds and mostly stayed within the confines of his parents' property. On Friday, after dropping off his child at

Babbitt's house, Davis returned to his family's home. He parked in a remote wooded area of the farm to avoid an interaction with the police regarding what happened at Kennebeck's home. He stayed in his car listening to music and smoking, and later walked to a nearby church, where he prayed for a couple of hours before returning to his car where he slept overnight.

On Saturday morning, Davis testified that he wandered from his car to his parents' house to eat, but no one from his family saw him do so. He then returned to his car until about 5:00 p.m., at which time he once again returned to his parents' home. This time, his family was present and he agreed to turn himself into law enforcement because of what happened at Kennebeck's home a couple of hours later.

Davis admitted he owned the ammunition can, gun magazines, and AR-15 but claimed they had been stolen from his car four to six weeks before the murder. Davis acknowledged that he never reported his weapon and ammunition being stolen. He suggested that someone had deliberately placed the incriminating evidence near the murder scene or on the family farm in order to frame him for the murder.

Upon conclusion of the six-day trial, the jury deliberated over two days before returning a guilty verdict to murder in the first degree. Davis filed a timely appeal, and we transferred the case to the court of appeals. The court of appeals affirmed the conviction but remanded the case to the district court for the limited purpose of entering an order removing the court costs and attorney fee obligations from the sentencing order to be consistent with the oral

pronouncement at sentencing. We take this case on further review upon Davis's application.

## II. Standard of Review.

"We have discretion to choose which issues we review when we take a case on further review." *In re D.M.*, 965 N.W.2d 475, 480 n.2 (Iowa 2021) (quoting *Holmes v. Pomeroy*, 959 N.W.2d 387, 389 (Iowa 2021)). We use our discretion to review the jury instruction on reasonable doubt and instruction to break a jury deadlock. However, we let the court of appeals decision stand on the remaining issues, including the sufficiency of the evidence, challenges to the closing arguments, and the need for a nunc pro tunc order.

"[W]e generally review a district court's refusal to give a requested jury instruction for errors at law; however, if the jury instruction is not required but discretionary, we review for an abuse of discretion." *State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020) (alteration in original) (quoting *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017)) "[W]e consider the jury instructions as a whole rather than in isolation to determine whether they correctly state the law." *State v. Benson*, 919 N.W.2d 237, 242 (Iowa 2018).

## III. Analysis.

**A. Reasonable Doubt Instruction.** Davis disputes whether the trial court was correct to exclude his proposed reasonable doubt instruction. The trial court provided the following jury instruction:

> The burden is on the State to prove Ethan Landon Davis guilty beyond a reasonable doubt.

A reasonable doubt is one that fairly and naturally arises from the evidence in the case, or from the lack or failure of evidence produced by the State.

If, after a full and fair consideration of all the evidence, you are *firmly convinced* of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.

But if, after a full and fair consideration of all the evidence in the case, or from the lack or failure of evidence produced by the State, you are *not firmly convinced* of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.

(Emphasis added.) In addition to the language cited above, Davis requested the insertion of an additional paragraph that included a "hesitate to act" formulation:

A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person *hesitate to act.* Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to reply and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

(Emphasis added.) The trial court denied the request to include this paragraph, relying on *State v. Frei*, in which we approved an instruction that solely provided the "firmly convinced" formulation of reasonable doubt. 831 N.W.2d 70, 79 (Iowa 2013), *overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). The court of appeals determined the trial court was not legally required to provide the "hesitate to act" formulation because the "firmly convinced" formulation adequately addressed reasonable doubt and did not abuse its discretion by refusing to add the "hesitate to act" formulation.

Reasonable doubt is one of the most recognizable concepts in our criminal justice system. It sets forth a demanding burden of proof on the government.

"[A]n understanding of reasonable doubt is crucial to the deliberations of the jury in nearly every criminal case." *State v. McGranahan*, 206 N.W.2d 88, 92 (Iowa 1973) (en banc). Despite its grave importance, "[c]ourts have struggled . . . in settling upon a serviceable definition of the 'reasonable doubt' standard." *Frei*, 831 N.W.2d at 77. Notably, "[t]he Due Process Clause provides no definitional guidance as it requires no 'particular form of words be used in advising the jury of the government's burden of proof.'" *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)). The lack of definitional guidance has produced several jury instructions explaining reasonable doubt in different ways such as "hesitate to act," "firmly convinced," "abiding conviction," and their respective variations. 2A Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure: Criminal: Federal Rules of Criminal Procedure* § 502 (4th ed. 2009) [hereinafter Wright & Henning]; *see* 1 Barbara E. Bergman, Nancy Hollander, & Theresa M. Duncan, *Wharton's Criminal Evidence* § 2.4, Westlaw (15th ed. database updated Oct. 2020). As the concurrence in part and dissent in part in this case mentions, some jurisdictions do not provide any jury instruction defining or describing reasonable doubt. *See, e.g.*, *United States v. Walton*, 207 F.3d 694, 696–99 (4th Cir. 2000) (per curiam).

1. *The Iowa State Bar Association's uniform criminal jury instructions on reasonable doubt.* The Iowa State Bar Association (ISBA) publishes uniform jury instructions every year that attorneys and district courts rely upon for civil and criminal proceedings. These uniform instructions include a jury instruction explaining "reasonable doubt." We have acknowledged that "trial courts should

generally adhere to the uniform instructions." *State v. Becker,* 818 N.W.2d 135, 143 (Iowa 2012) (quoting *State v. Mitchell,* 568 N.W.2d 493, 501 (Iowa 1997)), *overruled on other grounds by Alcala,* 880 N.W.2d at 708 n.3. Even though "we normally approve the submission of uniform instructions, we [can] conclude [a] particular instruction is faulty." *State v. McMullin,* 421 N.W.2d 517, 518 (Iowa 1988). "[T]rial courts are [not] bound by any model or form in formulating instructions." *McGranahan,* 206 N.W.2d at 92; *see Becker,* 818 N.W.2d at 141. Moreover, "[t]rial courts have a rather broad discretion in the language that may be chosen to convey a particular idea to the jury." *Stringer v. State,* 522 N.W.2d 797, 800 (Iowa 1994).

One of the first ISBA jury instructions on reasonable doubt was published in 1972. Iowa State Bar Ass'n, Unif. Jury Instr. (Criminal) 501.11 (1972). This 1972 uniform jury instruction defined reasonable doubt as:

> A "reasonable doubt" is such a doubt as fairly and naturally arises in your mind and by reason of which you cannot say that *you have a full and abiding conviction of the guilt of the defendant*; and if, after considering all of the circumstances as disclosed by the evidence, *you find your mind wavering or vaci[l]lating,* then you have a reasonable doubt, and the defendant is entitled to the benefit of such doubt and you must acquit him. *A reasonable doubt may arise from the evidence in the case or it may arise from a lack or failure of evidence, and it must be such a doubt as would cause a reasonable, prudent and considerate man to pause and hesitate before acting in the graver and more important affairs of life.* But you should not ignore credible evidence to hunt for doubt, and you should not entertain such doubt as is purely imaginary or fanciful or based on groundless conjecture. If, after a careful and impartial consideration of all of the evidence in the case, you have a full and abiding conviction of the guilt of the defendant, then you are satisfied beyond a reasonable doubt, otherwise you are not satisfied beyond a reasonable doubt.

*Id.* (emphasis added). In *State v. McGranahan,* we determined that any one of the emphasized reasonable doubt formulations—"full or abiding conviction," "wavering or vaci[l]lating," or "hesitate before acting in the graver and more important affairs of life"—would be more acceptable than a jury instruction that did not substantively define reasonable doubt. 206 N.W.2d at 91–92.

Sixteen years later, the ISBA instruction on reasonable doubt changed to solely define reasonable doubt with a "firmly convinced" formulation. Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (1988). This instruction is substantially similar to what the district court in this case provided:

> The burden is on the State to prove (name of defendant) guilty beyond a reasonable doubt.
>
> A reasonable doubt is one that fairly and naturally arises from the evidence, or lack of evidence produced by the State.
>
> If, after a full and fair consideration of all the evidence, you are *firmly convinced* of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.
>
> But if, after a full and fair consideration of all the evidence or lack of evidence produced by the State, you are *not firmly convinced* of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.

*Id.* (emphasis added). Nearly twenty years later, in 2007, a new paragraph expressing a "hesitate to act" formulation was included along with the "firmly convinced" language in the ISBA's jury instruction on reasonable doubt. This instruction is almost identical to what Davis proposed to the district court:

> The burden is on the State to prove (name of defendant) guilty beyond a reasonable doubt.

A reasonable doubt is one that fairly and naturally arises from the evidence in the case, or from the lack or failure of evidence produced by the State.

*A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.*

If, after a full and fair consideration of all the evidence, you are firmly convinced of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.

But if, after a full and fair consideration of all the evidence in the case, or from the lack or failure of evidence produced by the State, you are not firmly convinced of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2007) (emphasis added). The current ISBA instruction remains substantially similar to this instruction. *Compare* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2007), *with* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2020).

2. *The "firmly convinced" formulation is a legally adequate definition of reasonable doubt.* Both parties agree that "firmly convinced" is a legally adequate formulation of reasonable doubt and that we explicitly approved this formulation in *Frei*, 831 N.W.2d at 76–79. In *Frei*, we noted that previous Iowa caselaw approved of an analogous "firmly and abidingly convinced" formulation as "an objective standard for measuring the jurors' doubts." *Id.* at 78 (quoting *State v. McFarland*, 287 N.W.2d 162, 163 (Iowa 1980)). We also acknowledged that several academics, respected jurists, and multiple courts also had endorsed the

"firmly convinced" formulation. *Id.* at 78–79. Furthermore, we concluded that the dictionary definitions of "firmly" and "firm" showed them to be "plain, well-understood word[s] commonly used in modern speech . . . [that] adequately expressed . . . the extent of certitude the jury must possess to convict a defendant of a crime in this state." *Id.* at 79. Despite our approval of the "firmly convinced" language in *Frei*, we noted that "this case should not be viewed as a rejection of any other formulation expressing in equivalent terms the state's burden of proof." *Id.* at 79 n.7.

3. *Davis's proposed "hesitate to act" formulation is a legally adequate definition of reasonable doubt.* The "hesitate to act" formulation carries some similar traits of the "firmly convinced" formulation we approved in *Frei*. The United States Supreme Court has historically approved "hesitate to act" formulations to define reasonable doubt. *Holland v. United States*, 348 U.S. 121, 140 (1954) ("We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act . . . ." (citation omitted)); *see Victor,* 511 U.S. at 20–21 ("[T]he hesitate to act standard gives a common sense benchmark for just how substantial such a doubt must be."); *cf. Hopt v. Utah,* 120 U.S. 430, 441 (1887) ("If the evidence produced be of such a convincing character that they would unhesitatingly be governed by it in such weighty and important matters, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the

uncertainty that attends all human evidence."). Several federal circuits[3] and state courts[4] have also approved variations of the "hesitate to act" formulation. *See* 2A Wright & Henning § 502 ("The most acceptable form of instruction is that a reasonable doubt is a doubt that would cause a prudent person to hesitate before acting in matters of importance to themselves, but other formulations are not erroneous."); *see also* Robert C. Power, *Reasonable and Other Doubts: The Problem of Jury Instructions*, 67 Tenn. L. Rev. 45, 73–76 (1999) [hereinafter Power].

We also indicated in *McGranahan* that one "hesitate to act" variation—"it must be such a doubt as would cause a reasonable, prudent and considerate man to pause and hesitate before acting in the graver and more important affairs

---

[3] *See, e.g.*, *United States v. Owens*, 966 F.3d 700, 705 n.2 (8th Cir. 2020) ("A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act."); *United States v. Stewart*, 306 F.3d 295, 306–07 (6th Cir. 2002) ("Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives."); *United States v. Isaac*, 134 F.3d 199, 202–04 (3d Cir. 1998) ("A reasonable doubt is a fair doubt, based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it, unhesitatingly, in the most important of your own affairs."); *United States v. Morris*, 647 F.2d 568, 571 (5th Cir. 1981) ("[P]roof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.").

[4] *See, e.g.*, *Smith v. United States*, 709 A.2d 78, 82 (D.C. 1998) (en banc) ("Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life."); *Hilbish v. State*, 891 P.2d 841, 850 (Alaska Ct. App. 1995) ("[P]roof of such a convincing character that after careful consideration of all relevant facts and circumstances, you would be willing to rely and act upon it without hesitation in your important affairs."); *State v. Gomez*, 622 A.2d 1014, 1017 n.8 (Conn. 1993) ("[A] reasonable doubt is a doubt which would cause you as reasonable and prudent men and women to hesitate to act in the more weighty and important matters relating to your own affairs."); *Commonwealth v. Bowser*, 624 A.2d 125, 137–38 (Penn. Super. Ct. 1993) ("A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate or refrain from acting upon some matter of the highest importance in your own daily life."); *State v. Darby*, 477 S.E.2d 710, 710 (S.C. 1996) (approving a reasonable doubt definition as "the kind of doubt that would cause a reasonable person to hesitate to act").

of life"—would be an acceptable definition of reasonable doubt as compared to no substantive definition. 206 N.W.2d at 91–92; *see McFarland*, 287 N.W.2d at 163 ("We quoted with approval Iowa Uniform Jury Instruction 501.11 with its three distinct standards [in *McGranahan*] . . . ."); *see also State v. Pierce*, 21 N.W. 195, 197–98 (Iowa 1884) (approving a jury instruction as a whole which included reasonable doubt "must be such a doubt as would cause a reasonable, prudent, and considerate man to hesitate and pause before acting in the graver and more important affairs of life" (emphasis omitted)).

Davis's specific "hesitate to act" variation was most notably present in the Eighth Circuit's Model Jury Instructions and in the ISBA's current criminal jury instructions. Jud. Comm. on Model Jury Instructions for the Eighth Cir., *Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* § 3.11 (2011) ("Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it."); Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2020).[5] On its own, "hesitate" means "to hold back in doubt or indecision" and is synonymous with "waver," "vacillate," and "falter." *Hesitate, Webster's Third International Dictionary* 1061 (unabr. ed. 2002). Similar to "firmly," "hesitate to act" is generally understood and can adequately explain to the jury the level of certainty needed to convict. *Victor*, 511 U.S. at 20–21; *cf. Frei*, 831 N.W.2d at 79. We

---

[5]The Eighth Circuit's model jury instruction was recently updated to include a phrase "in life's most important decisions" after the "hesitate to act" portion. Jud. Comm. on Model Jury Instructions for the Eighth Cir., *Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* § 3.11 (2021). The "in life's most important decisions" portion is not present in the ISBA's current jury instruction on reasonable doubt.

conclude that Davis's proposed "hesitate to act" formulation is also a legally sufficient jury instruction to define reasonable doubt.

4. *The district court's decision to reject the "hesitate to act" formulation was not an abuse of discretion.* Davis argues the district court's rationale in rejecting the "hesitate to act" instruction amounts to an abuse of discretion. Specifically, he argues that we approved of the "hesitate to act" variations in *McGranahan* and *Pierce. See McGranahan,* 206 N.W.2d at 92; *Pierce,* 21 N.W. at 197–98. Because of this prior approval, Davis asserts the district court's rationale that the Iowa Supreme Court has not given its "imprimatur" to the "hesitate to act" language was wrong and constitutes an abuse of discretion.

Our precedent is explicit that the district court need only provide one of the approved "reasonable doubt" definitions from the ISBA's uniform jury instructions to the jury in order for it to be legally sufficient. While we indicated that any of the ISBA's reasonable doubt formulations in its 1972 jury instruction would be better than no formulation in *McGranahan,* we warned that "[w]e do not hold all or any of these three frames of reference must be included or described in the instruction." 206 N.W.2d at 92. In *State v. McFarland,* we specifically stated that the jury instruction, which utilized solely the "abidingly and firmly convinced" language, "was not deficient for failing to provide more than one standard." 287 N.W.2d at 163. Similarly, in *Frei,* we held the district court did not err by providing a reasonable doubt jury instruction that solely contained the legally adequate "firmly convinced" language rather than the defendant's proposed "hesitate to act" instruction. 831 N.W.2d at 75–76.

This district court's action is comparable to what occurred in *State v. Williams*, 929 N.W.2d 621 (Iowa 2019). In *Williams*, the district court rejected the defendant's additional implicit-bias instruction because the additional "instruction had not been reviewed by any Iowa court to its knowledge" and another implicit-bias instruction modeled after the ISBA's instruction already "covered the subject matter." *Id.* at 633. We determined the district court did not abuse its discretion because its instruction adequately addressed the defendant's concerns of implicit bias. *Id.* An abuse of discretion may have occurred here if the district court's instruction did not substantively define reasonable doubt or if the district court believed it lacked authority to define reasonable doubt at all. *McGranahan*, 206 N.W.2d at 91–92; *see Plain*, 898 N.W.2d at 816–17 (finding abuse of discretion when the trial court erroneously believed it did not have authority to provide *any* implicit-bias instruction). Similar to *Williams*, the district court here gave an approved instruction that adequately explained the legal concept at issue.[6] Therefore, the trial court did not abuse its discretion in refusing to include the additional "hesitate to act" language in the jury instruction on reasonable doubt.

5. *District courts should solely utilize the "firmly convinced" formulation.* Agreeing on a jury instruction for reasonable doubt remains a contentious issue in district court. The debate on an appropriate reasonable doubt instruction has been the subject of unpublished decisions by the Iowa Court of Appeals since

---

[6]We make no determination as to whether the implicit-bias instruction given in *Williams*, 929 N.W.2d at 632–33, is better than the most recent ISBA implicit-bias instruction.

the 2007 ISBA jury instruction on reasonable doubt included the "hesitate to act" formulation. *See State v. Chamberlain*, No. 17–1426, 2018 WL 6719730, at *6–7 (Iowa Ct. App. Dec. 19, 2018); *State v. Tullar*, No. 13–1567, 2014 WL 6680927, at *3–4 (Iowa Ct. App. Nov. 26, 2014); *State v. Thinh Van Quang*, No. 12–0739, 2013 WL 4504934, at *5–6 (Iowa Ct. App. Aug. 21, 2013); *State v. Merrett*, No. 11–0776, 2013 WL 104545, at *4 (Iowa Ct. App. Jan. 9, 2013); *State v. Tabor*, No. 10–0475, 2011 WL 238427, at *2–3 (Iowa Ct. App. Jan. 20, 2011); *State v. White*, No. 09–1463, 2011 WL 227587, at *3–4 (Iowa Ct. App. Jan. 20, 2011). Each of these court of appeals decisions has held the district court does not err when it solely provides the "firmly convinced" definition instead of adding or solely using the "hesitate to act" definition in a reasonable doubt jury instruction.

The ISBA uniform criminal jury instructions committee, whose committee members are regularly handling criminal jury instructional issues in our district courts, is undoubtedly aware of the several different formulations of reasonable doubt jury instructions provided in both opinions. Ultimately, the committee has settled on two formulations—"hesitate to act" and "firmly convinced"—as the best reasonable doubt formulations. But as exemplified by the unpublished court of appeals opinions, the specific legal debate between using the hesitate to act and firmly convinced formulation, or "race" as the concurrence in part and dissent in part puts it, has been occurring for nearly fifteen years in our court system. As with all marathons, they must come to an end. Guidance is appropriate to

reduce further appellate litigation and confusion in district court on which formulation for a jury instruction on reasonable doubt is most preferred.[7]

We believe the "firmly convinced" formulation as used in this case best captures reasonable doubt. "[T]he 'firmly convinced' standard has achieved extensive recognition and is likely the formulation of the reasonable doubt standard most widely approved by American jurists, academics, and litigants." *Frei*, 831 N.W.2d at 78 (citing Lawrence M. Solan, *Refocusing the Burden of Proof in Criminal Cases: Some Doubt About Reasonable Doubt*, 78 Tex. L. Rev. 105, 145 (1999) *and* Jon O. Newman, *Beyond "Reasonable Doubt,"* 68 N.Y.U. L. Rev. 979, 990–91 (1993)). A highly regarded report from distinguished federal judges at the Federal Judicial Center (FJC) endorsed solely utilizing the "firmly convinced" definition. Fed. Jud. Ctr., *Pattern Criminal Jury Instructions* § 21, at 28–29 (1987) [hereinafter Fed. Jud. Ctr., *Pattern Instructions*]. Justice Ginsburg described "firmly convinced" as "clear, straightforward, and accurate." *Victor*, 511 U.S. at 26–27 (Ginsburg, J., concurring in part and concurring in the judgment). One prominent study, cited by the concurrence in part and dissent in part, found the "firmly convinced" formulation more accurately distinguished weak and strong criminal cases as compared to other mainstream reasonable doubt formulations.

---

[7]The concurrence in part and dissent in part worries that section III.A.5 of this opinion amounts to overruling "a long and well-established line of our caselaw providing discretion to district court judges" on jury instructional issues and that this opinion amounts to an "advisory opinion." Those concerns fail to account for the advantages of having a single, consistent jury instruction on reasonable doubt in Iowa courts and our inherent supervisory authority over Iowa district courts. *See State v. Portillo*, 898 P.2d 970, 974 (Ariz. 1995) (en banc) (invoking supervisory authority to utilize "firmly convinced" reasonable doubt jury instruction). Moreover, we have previously provided guidance to district courts on jury instructions in other areas. *See, e.g., State v. Campbell*, 294 N.W.2d 803, 812–13 (Iowa 1980) (endorsing a jury deadlock instruction from American Bar Association and ISBA).

Irwin A. Horowitz, *Reasonable Doubt Instructions: Commonsense Justice and Standard of Proof*, 3 Psychol. Pub. Pol'y & L. 285, 296–97, 300 (1997) [hereinafter Horowitz] (concluding that "[r]esearch suggests that at least one definition of the reasonable doubt standard (i.e., the ['firmly convinced'] instruction) is more likely to enhance jury performance than others").

Despite the "hesitate to act" formulation being legally sufficient and having historic approval, this formulation has recently drawn significant criticism. Power, 67 Tenn. L. Rev. at 78–81; *see Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000) ("Judgments that brand men and women as criminals, and take their money, their liberty, or their lives are deadly serious. They are decisions that make us hesitate if we have any human feelings or sensitivity at all."). Criticism of "hesitate to act" is especially increased when the hesitancy is framed in the context of important personal affairs—an analogy that has been examined as inappropriate for deciding criminal cases. *See Victor*, 511 U.S. at 24 (Ginsburg, J., concurring in part and concurring in the judgment) ("[T]he analogy it uses seems misplaced. In the decisions people make in the most important of their own affairs, resolution of conflicts about past events does not usually play a major role [and] . . . generally involve a very heavy element of uncertainty and risk-taking." (quoting Fed. Jud. Ctr., *Pattern Instructions* § 21 cmt., at 29)); *id.* at 34 (Blackmun, J., concurring in part and dissenting in part) (" '[H]esitate to act' language is far from helpful, and may in fact make matters worse by analogizing the decision whether to convict or acquit a defendant to the frequently high-risk personal decisions people must make in their daily lives.");

*United States v. Ashrafkhan*, 964 F.3d 574, 579–80 (6th Cir. 2020) ("[J]urists have noted that such language may tend to understate the government's burden of proof and have expressed trepidation at fully endorsing it."); *Commonwealth v. Ferreira*, 364 N.E.2d 1264, 1273 (Mass. 1977) ("The degree of certainty required to convict is unique to the criminal law. We do not think that people customarily make private decisions according to this standard nor may it even be possible to do so."); Mandeep K. Dhami et. al., *Instructions on Reasonable Doubt: Defining the Standard of Proof and the Juror's Task*, 21 Psychol. Pub. Pol'y & L. 169, 175 (2015) ("[B]y reducing the standard of proof below that intended by the law, the 'doubt-hesitate' instruction is more likely to lead to false convictions."). A "real doubt means a hesitation" or "waiver or facilitate" formulation has also shown greater statistical variability than "firmly convinced" with juries deciding between strong and weak criminal cases. Horowitz, 3 Psychol. Pub. Pol'y & L. at 296–97.

In acknowledging this criticism, we expressly approve jury instructions that use the "firmly convinced" formulation without the "hesitate to act" formulation. Because of the difference in superiority between the two definitions, an additional "hesitate to act" definition would not serve as an amplification to a jury instruction on reasonable doubt. Additionally, allowing the defendant to add an additional "hesitate to act" formulation to compete with the pre-existing "firmly convinced" formulation would have confused the jury on how to approach reasonable doubt and probably lead to individual jurors understanding reasonable doubt differently during jury deliberations. *See* Darryl K. Brown,

*Regulating Decision Effects of Legally Sufficient Jury Instructions*, 73 S. Cal. L. Rev. 1105, 1110–11 (2000) (explaining how the "firmly convinced" definition is superior). A similar concern exists if we were to include the "real possibility" portion from the FJC's model instruction to compete with the "firmly convinced" formulation. *Cf. United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987) (indicating the "real possibility" portion impermissibly places the burden of persuasion back onto the defense); *United States v. McBride*, 786 F.2d 45, 51–52 (2d Cir. 1986) (same); *State v. Jackson*, 925 A.2d 1060, 1067 n.3 (Conn. 2007) ("[U]se of ['real possibility'] actually may create confusion about the meaning of reasonable doubt and impermissibly shift the burden of proof to the defendant.").

We join the several states that have strongly urged their district courts to solely utilize the "firmly convinced" definition for reasonable doubt jury instructions. *See, e.g.*, *State v. Portillo*, 898 P.2d 970, 974 (Ariz. 1995) (en banc); *Jackson*, 925 A.2d at 1065–70; *Winegeart v. State*, 665 N.E.2d 893, 902 (Ind. 1996); *State v. Medina*, 685 A.2d 1242, 1251–52 (N.J. 1996); *State v. Reyes*, 116 P.3d 305, 314 (Utah 2005).[8] By explicitly approving the "firmly convinced"

---

[8]Among state jurisdictions, the concurrence in part and dissent in part mainly relies on the Hawaii Court of Appeals case *State v. Perez*, 976 P.2d 427 (Haw. Ct. App. 1998), and the Nebraska Supreme Court case *State v. Putz*, 662 N.W.2d 606 (Neb. 2003) (per curiam), for support that the "firmly convinced" instruction lowers the burden of proof. However, *Perez* and *Putz* are uniquely limited to Hawaii and Nebraska because their civil jury instructions also use "firm belief" to describe clear and convincing evidence that could lead to improper conflation between reasonable doubt and clear and convincing standards. *Perez*, 976 P.2d at 442; *Putz*, 662 N.W.2d at 613. That concern doesn't appear in Iowa's current uniform civil jury instructions. Iowa State Bar Ass'n, Iowa Civil Jury Instruction 100.19 (2020) ("Clear, convincing and satisfactory evidence. Evidence is clear, convincing and satisfactory if there is no serious or substantial uncertainty about the conclusion."); *see Commonwealth v. Russell*, 23 N.E.3d 867, 873–74 (Mass. 2015) ("Unlike the Hawaii standard for clear and convincing evidence, our cases

formulation of reasonable doubt, we hope to "eliminate confusion and foster fairness for defendants, the state, and jurors alike" and "obviate the need for any future appeals on this issue." *Portillo*, 898 P.2d at 974; *see Reyes*, 116 P.3d at 314. We hold that use of solely the "firmly convinced" formulation for a jury instruction on reasonable doubt will be considered a "safe harbor" instruction in Iowa district courts. *Reyes*, 116 P.3d at 314.[9]

**B. Verdict-Urging Instruction.** After seven hours of jury deliberation, the court attendant informed the court that the jury may be deadlocked. The court then told the parties that a verdict-urging instruction, also known as an *Allen* charge,[10] would be given to the jury. Davis objected on the grounds that such an instruction would have a coercive effect on the jury. The trial court provided the following instruction over Davis's objection:

> You've been deliberating on this case now for a considerable period of time, yesterday afternoon and most of this morning, and the Court deems it proper to advise you further in regard to the desirability of agreement, if possible.
>
> The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict, if possible. It's the law that a unanimous verdict is required, and while this verdict must be the conclusion of each juror and not mere acquiescence of the jurors in order to reach an agreement, it is still necessary for all jurors to examine the issues and questions

---

and instructions on clear and convincing evidence are not cast in terms of the 'firmness' of the jury's conclusions."); *see also Jackson*, 925 A.2d at 1066 n.2 (rejecting *Perez*).

[9]However, this decision does not prevent the use of other legally adequate jury instructions on reasonable doubt besides the "firmly convinced" formulation provided that *both* parties agree and the court approves the other legally adequate jury instruction on reasonable doubt.

[10]An "*Allen* charge" is a common name for a verdict-urging instruction originating from the Supreme Court case *Allen v. United States*, 164 U.S. 492, 500–02 (1896).

submitted to them with candor and fairness and with proper regard for, and deference to, the opinion of each other.

A proper regard for the judgment of others will greatly aid us in forming our own judgment. So each juror should listen to the arguments of the other jurors with a disposition to be convinced by them, and if the members of the jury differ in their views of the evidence, such difference of opinion should cause them to scrutinize the evidence more closely and to reexamine the grounds of their problem.

Your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so.

In conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy either side of a cause. The aim ever to be kept in view is the truth as it appears from the evidence, examined in the light of the instructions of the Court.

So you will again retire to the jury room, examine your differences in the spirit of fairness and candor, and try to arrive at a verdict. So I am advising you to please continue to review the evidence, review the jury instructions that have been provided to you, and continue your deliberations.

So at this time I'll have the court attendant return you to the jury room.

After the jury was provided with this instruction verbally, they deliberated for approximately four and a half hours before returning with a guilty verdict.

Davis argues that this supplemental verdict-urging instruction had a coercive effect on the jury and, as such, constitutes an abuse of discretion. *State v. Campbell*, 294 N.W.2d 803, 808–13 (Iowa 1980). Some jurisdictions have banned *Allen* charge instructions because of their coercive effect on the jury. *See, e.g.*, *State v. Weidul*, 628 A.2d 135, 136 (Maine 1993); *Commonwealth v. Spencer*, 275 A.2d 299, 303 (Pa. 1971). However, as Davis acknowledges, Iowa

courts have never held an *Allen* charge to be per se error. *Campbell*, 294 N.W.2d at 809.

In *State v. Campbell*, we reviewed and upheld a verdict-urging instruction quite similar to the one provided to the jury here. *Id.* at 808. When reviewing an *Allen* charge, we look at "whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated the disagreement." *Id.* According to *Campbell*, "each case is to be decided on its own circumstances" and the court "has considerable discretion in determining whether [a] verdict-urging instruction[] should be given." *Id.* at 808–09. Only in cases where prejudice has been demonstrated by surrounding circumstances will the trial court be reversed. *Id.*

Several factors are considered in determining whether coercion existed under the context and circumstances. Our caselaw has mainly focused on the content of the verdict-urging instruction and the timing surrounding the verdict. *State v. Piper*, 663 N.W.2d 894, 911–12 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010). We have also looked at responses from juror polling to ensure each juror was not coerced into their verdict. *Middle States Utils. Co. v. Inc. Tel. Co.*, 271 N.W. 180, 184–85 (Iowa 1937); *see In re Cocklin's Est.*, 5 N.W.2d 577, 583–84 (Iowa 1942).

1. *The district court's verdict-urging instruction lacked problematic content.* We have specifically condemned instructions targeting jurors in the minority by asking those jurors to reevaluate their opinions to possibly conform to the majority. *Campbell*, 294 N.W.2d at 809; *see Middle States Utils. Co.*, 271 N.W. at

184 ("[I]f any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such differences of opinion should induce the minority to doubt the correctness of their own judgment, and cause them to scrutinize the evidence more closely and re-examine the grounds of their opinion."); *Clemens v. Chi., R.I. & P. Ry.*, 144 N.W. 354, 357–58 (Iowa 1913) (same). Closely related to this concern is an action by the district court that proactively identifies the number of jurors of the minority opinion. *Piper*, 663 N.W.2d at 912; *State v. Cornell*, 266 N.W.2d 15, 19–20 (Iowa 1978) (en banc). We have also condemned language that requires the jury to reach a verdict and states that a hung jury would lead to a retrial or create further litigation expenses. *Piper*, 663 N.W.2d at 911–12; *Campbell*, 294 N.W.2d at 809.

This instruction lacks the problematic content that we have previously condemned. It does not target jurors in the minority to conform to other jurors. Rather, the instruction warns against acquiescence and implores all jurors to fully consider each other's opinions. *Campbell*, 294 N.W.2d at 811. Moreover, the district court did not identify the number of jurors with a minority opinion to further coerce the jury. *Piper*, 663 N.W.2d at 912; *Campbell*, 294 N.W.2d at 811. The instruction at issue also does not express any requirement that the jury reaches a verdict. Instead, the jury is repeatedly made aware they only have to reach a unanimous verdict "if possible" or "if you can conscientiously do so." *Burton v. Neill*, 118 N.W. 302, 303 (Iowa 1908) ("The court was justified in insisting that the jurors should give further deliberation to the case for the purpose of reaching an agreement, if possible, and the instruction was in

accordance with the proper practice in such cases, and not erroneous in the language used."). Lastly, the instruction does not discuss the possibility of a retrial or the mounting litigation expenses that *Campbell* found concerning. *Campbell*, 294 N.W.2d at 810–11 (collecting cases, including *Taylor v. Murray* and *In re Stern*, on litigation expenses); *see, e.g., Taylor v. Murray*, 115 S.E.2d 776, 778 (Ga. Ct. App. 1960) (discouraging a specific instruction that asked the jury to continue deliberating considering "the viewpoint of the litigants and from the viewpoint of the county and the expense to the county to have this problem to continue in the courts unresolved"); *In re Stern*, 95 A.2d 593, 594 (N.J. 1953) (reversing based on instruction that stated that "[i]t costs a lot of money to the state to maintain the court").

Davis takes issue with specific language pointing to how the jury had deliberated for a "considerable period of time" and how the parties have "exhaustively and carefully tried" the case. He argues that these considerations were directly linked to "the desirability of agreement" and the duty to reach a verdict. Again, any harm from this linkage is diminished by the repetitive "if possible" or "if you can conscientiously do so" reminders attached to the desirability of agreement and duty to reach a verdict. Even so, instructions about "deliberating for a considerable period of time" and how the parties have "exhaustively and carefully tried" the case don't go to influencing the jury on the expenses of the parties or the judicial system. Rather, these statements suggest that the evidence has been fully examined by both parties and that the jury should continue to deliberate with open minds.

Davis also objects to certain language discussing how "the jury room is no place for espousing and maintaining in a spirit of controversy either side of a cause." Davis claims that this sentence is coercive because it implies that the failure to reach an agreement arose from the jurors' personal failings or intentional obstruction of proper deliberations. We disagree. We have not found this specific language objectionable in the past. *Armstrong v. James & Co.*, 136 N.W. 686, 690 (Iowa 1912) (approving an instruction that included "on the other hand, the jury room, as said, is no place for mere pride of opinion, or for maintaining in the spirit of controversy either side of a cause"). Additionally, this language is buttressed with other instructions imploring jurors to have a "proper regard for the judgment of others," "the aim ever to be kept in view is the truth as it appears from the evidence," and to "examine . . . differences in the spirit of fairness and candor." With this context, we think this surrounding language "merely encourages the thoughtful consideration of all viewpoints before forming individual judgments" rather than putting blame on the jurors for failing to agree. *Campbell*, 294 N.W.2d at 812; *see Armstrong*, 136 N.W. at 690.

2. *The timing surrounding the verdict after the* Allen *charge does not indicate coercion.* The timing of the verdict involves several distinct observations. However, we are primarily concerned with whether the jury spent enough time engaging in "further worthwhile consideration before a verdict was agreed to." *Campbell*, 294 N.W.2d at 811 (quoting *State v. Kelley*, 161 N.W.2d 123, 126 (Iowa 1968)); *see Piper*, 663 N.W.2d at 912. For example, in *Coulthard v. Keenan*, we expressed our disapproval of an oral verdict-urging instruction given to a

deadlocked jury at two in the morning after eleven and a half hours of uninterrupted jury deliberation. 129 N.W.2d 597, 601–02 (Iowa 1964). The verdict in *Coulthard* was returned within ten minutes of the instruction. *Id.* at 601. Five of the ten minutes were likely spent on the formalities of courtroom procedure. *Id.* Five minutes could not have possibly been enough for the jury to engage in "any real deliberation after it returned to the jury room." *Id.* In other cases, we have noted that timeframes as short as forty-one minutes are sufficient indicia that the jury engaged in real deliberation of the case. *State v. Myers*, 140 N.W.2d 891, 898 (Iowa 1966); *see, e.g., Campbell*, 294 N.W.2d at 811 (two and a half hours); *Kelley*, 161 N.W.2d at 126 (two and a half hours); *State v. Bogardus*, 176 N.W. 327, 329 (Iowa 1920) (one and a half hours); *Armstrong*, 136 N.W. at 690 (one and a half hours).

The timing factor includes other aspects, although less relevant. In *Clemens v. Chicago, R.I. & P. Ry.*, we were concerned that the lengthy confinement before and after the verdict-urging instruction with suspect content would lead a reasonable juror to believe that they would not be able to leave unless they submitted to the jurors' majority opinion. 144 N.W. at 357. We have also looked at the ratio of "the time spent in deliberation before, and the duration of the deliberations after, such an instruction was given." *State v. Peirce*, 159 N.W. 1050, 1054 (Iowa 1916) (explaining prejudice arose when the jury spent forty-eight hours deliberating before a verdict-urging instruction containing suspect content and returned with a guilty verdict only four hours later), *overruled on other grounds by State v. McLaughlin*, 94 N.W.2d 303, 310

(Iowa 1959); *see Piper*, 663 N.W.2d at 912 ("[W]e note that the length of deliberations must be considered in the context of the entire case in deciding whether the jury was unfairly coerced into returning a verdict."). We are also cognizant of the time of day and specific day of the week when the verdict is announced. *See Peirce*, 159 N.W. at 1055 (determining prejudice arose after the verdict-urging instruction was given when confinement of the jury would have been extended into a Sunday because the district judge would not be present to receive a verdict on Saturday).

In the present case, the jury verdict was returned four and a half hours after the verdict-urging instruction was given. Four and a half hours was ample time for the jurors to engage in meaningful conversation on the evidence presented and thoroughly evaluate each other's opinions. Spending seven hours deliberating before the verdict-urging instruction and four and a half hours after the instruction is not a suspect ratio to indicate prejudice.

We do acknowledge that the jury returned a verdict in the late afternoon on a Friday. *United States v. Murvine*, 743 F.2d 511, 515 (7th Cir. 1984) ("[J]urors who begin deliberations at 9:30 on a Friday night, after a full day of trial and after serving all week, may be eager to reach a verdict and go home."). However, the court did not mention it was Friday or that there was an upcoming weekend in the verdict-urging instruction. *See United States v. Flannery*, 451 F.2d 880, 883 (1st Cir. 1971) (finding error when the judge reminded the jury it was Friday afternoon). Moreover, the instruction was given at around noon on a Friday rather than late at night. *United States v. Bailey*, 468 F.2d 652, 664

(5th Cir. 1972). The four and a half hours of deliberation after the verdict-urging instruction is enough to show the jury adequately reconsidered the case even with it being a Friday afternoon. *See id.*

3. *The polling of the jury supports a lack of coercion.* "The purpose of polling the jury is to determine that the verdict returned is actually the verdict of each individual member." *State v. Morelock,* 164 N.W.2d 819, 823 (Iowa 1969). In *Middle States Utilities Co. v. Incorporated Telephone Co.*, the district court used a verdict-urging instruction that targeted jurors with the minority opinion to re-examine their own judgment. 271 N.W. at 184. A verdict was returned seven hours after the instruction. *Id.* During polling, a juror stated "No--I had to" before quickly conforming. *Id.* We explained this first utterance "strongly indicates that the giving of the verdict inducing instruction had an effect not intended by the court in giving the same, namely, to overpersuade or coerce an agreement on the part of this particular juror to the verdict which was returned." *Id.* (granting a new trial based on other errors).

Here, each juror was polled in open court before the trial court judge, prosecution, and defense trial counsel. The record indicates the court attendant asked each juror whether guilty was that juror's verdict. Each juror responded "yes" to the question. In the record, neither party nor the trial court judge identified any hesitation, comments, or body language from the jurors during polling that would indicate coercion during the return of the verdict or in the motion for a new trial.

An *Allen* charge has been sometimes referred to as a "dynamite charge." *Kelley*, 161 N.W.2d at 127 (Rawlings, J., dissenting) (quoting *Green v. United States*, 309 F.2d 852, 854 (5th Cir. 1962)). Under the context and circumstances of this case, the court's verdict-urging instruction was no such thing. If anything, it was more like a sparkler than a stick of dynamite. It simply refocused the jurors on their responsibilities to go back to the jury room and consider the evidence and each other's opinions fairly and properly. We note that similar verdict-urging charges were upheld in *Campbell* and in *State v. Parmer*, an unpublished court of appeals decision referenced by both parties. *See Campbell*, 294 N.W.2d at 808; *State v. Parmer*, No. 13–2033, 2015 WL 2393652, at *6 (Iowa Ct. App. May 20, 2015). The trial court did not abuse its discretion in providing this verdict-urging instruction.

4. *Guidance to the trial courts.* We remain steadfast in our approval of the verdict-urging instruction procedure suggested for trial courts nearly forty years ago in *Campbell*. *Campbell* endorsed Iowa Uniform Jury Instruction No. 115 (currently 100.18), which significantly conforms with section 5.4(a) of the American Bar Association (ABA) Standards relating to Trial by Jury. 294 N.W.2d at 812–13. In the present case, we noted the instruction's absence of problematic language and its widespread support across jurisdictions. *See id.* Instead of polling it out when a jury appears to be stuck, this instruction should be "given at the conclusion of the trial, with the other instructions given to the jury before any deliberations have begun." *Id.* at 812. "If it later appears that the jury

cannot reach an agreement, the trial court may repeat the instruction before requiring continued deliberations." *Id.* at 812–13.

Davis argues in his further review application that *Campbell* prospectively mandated the ABA-approved approach. That is incorrect. *Campbell*'s support of the ABA standard was couched in phrases of "we recommend" or "we advise." *Id. Campbell* did not announce that the ABA approach was mandatory. *See, e.g., State v. Jensen,* 189 N.W.2d 919, 924 (Iowa 1971) ("We realize that the present decision changes a rule of evidence for criminal trials. The new rule will not be applied retrospectively."); *accord Weidul,* 628 A.2d at 136 ("Accordingly, we announce that departures from the ABA standard, if the subject of a proper objection, will be met by this court with summary reversal."); *People v. Sullivan,* 220 N.W.2d 441, 450 (Mich. 1974) ("Therefore, prospectively from the date of this opinion, the ABA standard jury instruction 5.4 as set forth herein is adopted by this Court. Any substantial departure therefrom shall be grounds for reversible error.").[11]

Regardless, *Campbell*'s endorsement of the ABA/ISBA instruction is best illustrated in *State v. Piper.* 663 N.W.2d at 910–13. In *Piper,* the jury told the district court that it was unable to reach a verdict after four days of deliberation.

---

[11]This court cited the American Law Report (ALR) extensively in deciding *Campbell.* 294 N.W.2d at 808–13. The ALR explained: "Associated with the determination of prejudicial effect is the question of prospective application. In many of the cases in which the Allen charge has been abandoned or modified, the courts have announced the new rule prospectively, without reversing the conviction under challenge." Wayne F. Foster, Annotation, *Instructions Urging Dissenting Jurors in State Criminal Case to Give Due Consideration to Opinion of Majority (Allen Charge)—Modern Cases,* 97 A.L.R.3d 96, 104 (1980). *Campbell*'s lack of an explicit mandatory language prospectively adopting the ABA standards appears purposeful in light of the ALR and several cases cited therein.

*Id.* at 910–11. In response, the district court "referred the jury to" a verdict-urging instruction, modeled substantially after the ABA instruction that was approved in *Campbell*, provided in the original instructions. *Id.* at 911 (citing *Campbell*, 294 N.W.2d at 812). The *Piper* court found no objectionable language in this instruction and concluded that ten to eleven hours of deliberation after the postverdict-urging instruction was enough time for the jury to adequately reconsider the evidence and their opinions. *Id.* at 912. We believe the best option is to closely follow the process set out in *Piper* and utilize the approved ABA/ISBA instruction described in *Campbell* in the initial instructions and remind the jury of this initial instruction if the jury is deadlocked:

> When you begin your deliberations, you should select a foreperson. He or she shall see that your deliberations are carried on in an orderly manner, that the issues are fully and freely discussed, and that every juror is given an opportunity to express his or her views.
>
> In order to return a verdict, each juror must agree to it. Your verdict must be unanimous.
>
> It is your duty as jurors to consult with one another and reach an agreement, if you can do so without compromising your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with the other jurors.
>
> During your deliberations, do not hesitate to re-examine your view and change your opinion if convinced it is wrong. But do not change your opinion as to the weight or effect of the evidence just because it is the opinion of the other jurors or for the mere purpose of returning a verdict.
>
> Your attitude at the beginning of your deliberations is important. It is not a good idea for you to take a position before thoroughly discussing this case with the other jurors. If you do this, individual pride may become involved and you may later hesitate to change an announced position even if shown it may be incorrect.

> Remember, you are not partisans or advocates but are judges—judges of the facts. Your sole interest is to find the truth and do justice.

*Id.* at 911 n.3.

**IV. Conclusion.**

For these reasons, we affirm the decision of the court of appeals and the district court judgment, and we remand the case for entry of the nunc pro tunc order.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., and Waterman, Mansfield, McDonald, Oxley, and McDermott, JJ., join this opinion. Appel, J., files a concurrence in part and dissent in part.

**APPEL, Justice (concurring in part and dissenting in part).**

### I. Introduction.

I respectfully concur in part and dissent in part. I agree with the court's thorough reasoning on instructional issues related to deadlocked juries. I would not, however, provide muscular dicta declaring that while both the "firmly convinced" instruction offered by the State and the "firmly convinced" and "hesitate to act" instruction offered by the defendant are constitutionally acceptable, district courts should "solely" use the State's "firmly convinced" formulation.

I cannot agree for several reasons. First, the majority's straightjacket on the acceptable formulation of a reasonable doubt instruction by the district court is unnecessary to resolve the case. We are not, of course, an Article III court, and thus our constitution does not expressly limit our power to "cases" and "controversies," but we should exercise caution in deciding complicated jury instruction issues in advisory opinions not essential to the judgment. U.S. Const. art. III, § 2. As will be seen below, this case is a poor vehicle to reach out to engage in a rulemaking-type proceeding as a number of instructional alternatives have not been thoroughly explored or illuminated.

Second, we have repeatedly not engaged in prescriptive wordsmithing on jury instructions. The well-established law is that the district court "is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the

case." *State v. Marin*, 788 N.W.2d 833, 838 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).

But today, the majority concludes that the district court may not decide to use a constitutionally acceptable alternative jury instruction on reasonable doubt. Although not stated in the majority opinion, there can be little doubt that it overrules a long and well-established line of our caselaw providing discretion to district court judges relating to the formulation of appropriate jury instructions. *See State v. Hibdon*, 505 N.W.2d 502, 506 (Iowa Ct. App. 1993). Whatever is at work in the majority's advisory opinion, it is not stare decisis.

Third, the majority does not recognize that the "firmly convinced" instruction that the State urges us to approve, and which the majority so warmly embraces, is *not* the "firmly convinced" instruction approved by the Federal Judicial Center (FJC) in 1987. As will be seen below, the language in the State's proposed instruction varies materially from the FJC's version.

Finally, if we are now in the business of fashioning a mandatory reasonable doubt jury instruction for all Iowa judges to use through the end of time, we should at least broaden our horizons to select the best reasonable doubt instruction available. Before putting judicial concrete around our reasonable doubt instruction, we should engage in a thorough analysis of all available alternatives. We do not want to entomb an instruction in our law when we've limited our choices to two alternatives even though many others are available.

**II. The Majority Does Not Address the Question of Whether "Reasonable Doubt" Should Be Further Defined or Why the Phrase "Firmly Convinced" is Helpful.**

The majority is confident that reasonable doubt needs to be further defined with its proposed brief "firmly convinced" language. Note the word "reasonable" is replaced with "firmly" and the word "doubt" is replaced with the word "convinced." On the surface, the majority's preferred reformulation looks to me like a ratcheting up of language rather than an effort to clarify it.

As a result of similar concerns, many courts have been more cautious than the majority in providing alternative words for "reasonable doubt." There is authority for the proposition that the term "reasonable doubt" should not be further defined because to do so introduces more trouble than benefit. *See, e.g.*, *United States v. Walton*, 207 F.3d 694, 697–99 (4th Cir. 2000) (en banc) (per curiam) (noting that any attempts to define reasonable doubt do not usually result in making it clearer and that only a jury can truly define reasonable doubt); *United States v. Cassiere*, 4 F.3d 1006, 1024 (1st Cir. 1993) (concluding that an instruction that requires a reasonable doubt standard "without [a] definition adequately apprises the jury of the proper burden of proof" (quoting *United States v. Olmstead*, 832 F.2d 642, 646 (1st Cir. 1987))); *United States v. Taylor*, 997 F.2d 1551, 1558 (D.C. Cir. 1993) (pointing out that ordinarily, a judge may be best advised to attempt no definition of reasonable doubt unless the jury requests it because experience has shown that doing so "add[s] little in the way of clarity and often add[s] much in the way of confusion and controversy"); *People v. Johnson*, 171 N.E.3d 936, 940 (Ill. App. Ct. 2020) (noting

that Illinois law is clear that neither the court nor the attorneys should attempt to define reasonable doubt because the term should be self-defining and needs no elaboration); *State v. Levitt*, 148 A.3d 204, 211 (Vt. 2016) (recognizing that "attempting to define reasonable doubt is a 'hazardous undertaking,' " and thus the court "continue[s] to discourage trial judges from trying such an explanation" (quoting *State v. Francis*, 561 A.2d 392, 396 (Vt. 1989))); *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (holding that "the better practice is to give no definition of reasonable doubt at all to the jury"); The Comm. on Federal Criminal Jury Instructions of the Seventh Cir., *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 1.04 & comm. cmt. (2020) [hereinafter *7th Circuit's Criminal Jury Instructions*] (providing no model instruction on reasonable doubt and noting that it would be "inappropriate" for the trial judge to attempt to do so). As noted in one United States Court of Appeals for the First Circuit case, "[m]ost efforts at clarification result in further obfuscation of the concept." *United States v. Campbell*, 874 F.2d 838, 843 (1st Cir. 1989) (quoting *Olmstead*, 832 F.2d at 645). I am not ready to embrace the nihilistic view that no adequate reasonable doubt construction may be developed, but I regard the above line of cases as waiving a yellow flag as this court roars past on its racecar docket. We need to be very careful to analyze any proposed instruction and carefully weigh its virtues and vices against those that inhere in other alternatives.

**III. The Majority's Proposed Mandatory Reasonable Doubt Instruction Omits Critical Language in the Federal Judicial Center Model Instruction.**

The majority apparently believes that the "firmly convinced" instruction as used in this case best captures reasonable doubt. The majority defends its endorsement by pointing out that some jurists, academics, and litigants seem to embrace a version of a reasonable doubt instruction approved by the FJC about fifty years ago. *See* Fed. Jud. Ctr., *Pattern Criminal Jury Instructions* § 21, at 28–29 (1987) [hereinafter Fed. Jud. Ctr., *Pattern Instructions*]; *see also State v. Frei*, 831 N.W.2d 70, 78–79 (Iowa 2013), *overruled on other grounds by Alcala*, 880 N.W.2d at 708 n.3.

But the clipped "firmly convinced" version endorsed by the majority in this case lacks critical language contained in the FJC model. The materially different FJC model instruction on reasonable doubt is as follows:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. *If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.*

Fed. Jud. Ctr., *Pattern Instructions* § 21, at 28–29 (emphasis added).

Now, compare that FJC language to the district court instruction issued in this case endorsed by the majority:

> The burden is on the State to prove Ethan Landon Davis guilty beyond a reasonable doubt.

A reasonable doubt is one that fairly and naturally arises from the evidence in the case, or from the lack or failure of evidence produced by the State.

If, after a full and fair consideration of all the evidence, you are firmly convinced of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.

But if, after a full and fair consideration of all the evidence in the case, or from the lack or failure of evidence produced by the State, you are not firmly convinced of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.

These two instructions, of course, are quite different. The last paragraph from the State's version in this case is merely a repetition of the previous language expressed but put in a negative voice. It adds nothing to help the jurors understand the concept of reasonable doubt—and perhaps even makes it more confusing. *See Paulson*, 28 S.W.3d at 573 (cautioning that it would be ill advised for the court to provide the jury with a redundant and confusing definition). And, strikingly and inexplicably, the majority's proposed instruction lacks the critical last sentence of the FJC version, namely: "If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty." Fed. Jud. Ctr., *Pattern Instructions* § 21, at 28. The majority does not explain why it approves an instruction that omits this important language from the FJC model instruction.

In fact, none of the cases cited in *Frei*—*United States v. Rodriguez*, 162 F.3d 135, 145–46 (1st Cir. 1998) (including the "real possibility" language in the

FJC model instruction)[12], *United States v. Reese*, 33 F.3d 166, 170 (2d Cir. 1994) (adopting the FJC model instruction verbatim), *United States v. Williams*, 20 F.3d 125, 127–28 (5th Cir. 1994) (same), and *United States v. Conway*, 73 F.3d 975, 980 (10th Cir. 1995) (same)—resemble the language we have here. *See Frei*, 831 N.W.2d at 78–79. Notably, there is no model jury instruction in the federal circuits that resembles the instruction endorsed in this case.[13]

The majority cites Irwin Horowitz's study to show that the "firmly convinced" formation is more likely to enhance jury performance. *See* Irwin A.

---

[12]In *Rodriquez*, the instruction at issue read, in part:

> A reasonable doubt may arise not only from the evidence produced but also from the lack of such evidence. A reasonable doubt exists when, after weighing and considering all the evidence in the case, using your reason and common sense, you cannot say that you have a firm and settled conviction that the charge is true.
>
> It is not enough for the government to establish a probability, even a strong probability, that a defendant is more likely guilty than not. That is not enough. Proof beyond a reasonable doubt must be proof of such a convincing character that you can, consistent with your oath as jurors, conscientiously base your verdict upon it. If you so find as to a defendant, you will return a verdict of guilty. *On the other hand, if you think there is a real possibility that the defendant is not guilty* of the charges, you must give the defendant the benefit of *that doubt* and find him not guilty.

162 F.3d at 145.

[13]Among all the circuit courts' pattern jury instructions, five have adopted the "hesitate to act" language. *See* Comm. on Model Criminal Jury Instructions: Third Cir., *Model Criminal Jury Instructions* § 3.06 (2018); Comm. on Pattern Jury Instructions, *Pattern Jury Instructions (Criminal Cases)* § 1.05 (2019) (Fifth Circuit); Sixth Cir. Comm. on Pattern Criminal Jury Instructions, *Pattern Criminal Jury Instructions* § 1.03 (2021); Jud. Comm. on Model Jury Instructions for the Eighth Cir., *Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* § 3.11 (2021); Jud. Council of the United States Eleventh Judicial Cir., *Pattern Jury Instructions for Criminal Cases* § B3 (2022). Only the First Circuit, the Ninth Circuit, and the Tenth Circuit have chosen the FJC's "firmly convinced" formulation. *See* United States District Court: District of Maine, *2022 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 3.02 & cmt. 4 (2022); Ninth Circuit Jury Instructions Comm., *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 6.5 (2021); Criminal Pattern Jury Instruction Comm. of the United States Court of Appeals for the Tenth Cir., *Criminal Pattern Jury Instructions* § 1.05 (2021). The Seventh Circuit refuses to provide any definition of reasonable doubt. *See 7th Circuit's Criminal Jury Instructions* § 1.04. Notice that even the circuit courts that have adopted the "firmly convinced" instruction follow the FJC formulation, which little resembles the one in this case.

Horowitz, *Reasonable Doubt Instructions: Commonsense Justice and Standard of Proof*, 3 Psychol. Pub. Pol'y & L. 285, 296–97, 300 (1997) [hereinafter Horowitz]. Yet, Horowitz's study actually used the FJC model instruction, which, as established earlier, was nothing like the one favored by the majority. *Id.* at 294–98. The majority cites to no empirical study establishing that the clipped "firmly convinced" formulation used here would yield the same result. Additionally, the "hesitation" formulation Horowitz used in his research was also materially different from the "hesitate to act" language in The Iowa State Bar Association's (ISBA) model instruction. *Compare id.* at 294 ("Proof beyond a reasonable doubt means that you are not left with a *real doubt* that the defendant is not guilty; real doubt means a hesitation[.]"), *with* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2020) ("A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act.").

The bottom line is that the clipped "firmly convinced" instruction in this case is materially different from the one proposed by the FJC. To adopt the majority's instruction is to reject the work of the FJC in favor of a repetitive and potentially unbalanced instruction.

**IV. Mixed Judicial Responses to the "Firmly Convinced" Approach to the Reasonable Doubt Instruction of the Federal Judicial Center.**

**A. Federal Courts.** The federal courts are not uniform on the issue of the reasonable doubt instruction. As noted above, the Seventh Circuit has declined to provide further elaboration on the ground of causing confusion. And, some

courts have been critical of the "firmly convinced" formulation. For instance, in

*United States v. Woodward*, the First Circuit stated:

> [W]e have previously joined other circuits in criticizing the Federal Judicial Center Instruction from which the district court's "firmly convinced" language is drawn. . . . We have expressed particular concern that "many definitions reduce the burden of proof on the government by expanding the degree of doubt permissible . . . ."

149 F.3d 46, 69 n.15 (1st Cir. 1998) (citations omitted). The First Circuit

subsequently endorsed a reasonable doubt instruction given by the district court

in *United States v. Cleveland* that avoided the firmly convinced language. 106

F.3d 1056 (1st Cir. 1997), *abrogated on other grounds by Brache v. United States*,

165 F.3d 99 (1st Cir. 1999).

In 1994, the Fifth Circuit considered the "firmly convinced" language in

*United States v. Williams*, 20 F.3d at 131. The *Williams* court concluded that the

"firmly convinced" formulation was satisfactory in light of the instructions as a

whole, which included the "real possibility" language contained in the FJC model

but excised in the State's proposed instruction in this case. *Id.*

The great majority of the federal circuit courts have also not gone along

with the recommendations of the FJC and instead include in their model

instructions the "hesitate to act"-type approach in the ISBA's model instruction.

*See* Comm. on Model Criminal Jury Instructions: Third Cir., *Model Criminal Jury*

*Instructions* § 3.06 (2018) ("A reasonable doubt is a fair doubt based on reason,

logic, common sense, or experience. It is a doubt that an ordinary reasonable

person has after carefully weighing all of the evidence, and is a doubt of the sort

that would cause him or her to hesitate to act in matters of importance in his or

her own life."); Comm. on Pattern Jury Instructions, *Pattern Jury Instructions (Criminal Cases)* § 1.05 (2019) (Fifth Circuit instruction stating: "Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in making the most important decisions of your own affairs"); Sixth Cir. Comm. on Pattern Criminal Jury Instructions, *Pattern Criminal Jury Instructions* § 1.03 (2021) ("Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives."); Jud. Comm. on Model Jury Instructions for the Eighth Cir., *Manual of Model Jury Instructions for the District Courts of the Eighth Circuit* § 3.11 (2021) ("Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person, after careful consideration, would not hesitate to rely and act upon that proof in life's most important decisions."); Judicial Council of the United States Eleventh Judicial Cir., *Pattern Jury Instructions for Criminal Cases* § B3 (2022) (" 'Proof beyond a reasonable doubt' is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs.").

The Tenth Circuit in one case even noted that the "hesitate to act" instruction is the better language to describe reasonable doubt. *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1273 (10th Cir. 1992) ("[I]t should be emphasized that the 'hesitate to act' language in our opinion more effectively conveys to a jury the meaning of reasonable doubt than most other

formulations." (alteration in original) (quoting *United States v. Hart*, 407 F.2d 1087, 1091 (2d Cir. 1969))).

The bottom line is that in the federal courts, there is a somewhat mixed view of the FJC model instruction on reasonable doubt. There is some authority, however, for the proposition that the inclusion of the "real possibility" language might help save the instruction from understating the State's burden when using the term "firmly convinced."

The majority pointed out that the "real possibility" language could lead to the burden shifting to the defendant. That argument was, of course, repeatedly rejected by courts. *Victor v. Nebraska*, 511 U.S. 1, 26 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) (describing the FJC instruction containing the "real possibility" language as "clear, straightforward, and accurate"); *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir. 1984) (holding that when the charge is read as a whole, the "real possibility" language would not cause burden shifting because other parts of the instruction were sufficient to dispel any possible confusion); *Reese*, 33 F.3d at 172 (rejecting argument that "real possibility" language burdens the defendant and holding that "[j]ury instructions must be viewed as a whole and in the context of the entire trial").

**B. State Courts.** The approach to reasonable doubt instructions in the state courts is mixed. For instance, in *State v. Perez*, the Intermediate Court of Appeals of Hawaii rejected the "firmly convinced" formulation as "so like the term 'firm belief of conviction' that is associated in law with . . . clear and convincing

evidence" to be beyond a reasonable doubt. 976 P.2d 427, 443 (Haw. Ct. App. 1998), *aff'd in part, rev'd in part on other grounds*, 976 P.2d 379 (Haw. 1999). The Hawaii court declared that the "firmly convinced" language of the instruction "diminished the very high standard by which the jury must abide in order to convict." *Id.* at 443.

Hawaii is not alone in rejecting the "firmly convinced" language. Although representing a minority of jurisdictions, several other states have latched onto the notion of reasonable doubt as "having a 'convincing character' which a reasonable person 'would not hesitate to rely and act upon.'" *See* Richard E. Welch III, *"Give Me That Old Time Religion": The Persistence of the* Webster *Reasonable Doubt Instruction and the Need to Abandon It*, 48 New Eng. L. Rev. 31, 45 n.73 (2013) (citing state jury instructions using the "convincing character" language).

In *State v. Putz*, the Nebraska Supreme Court considered a "firmly convinced" instruction. 662 N.W.2d 606, 611–15 (Neb. 2003) (per curiam). Like the Fifth Circuit in *United States v. Williams*, the Nebraska Supreme Court acknowledged the critique of the "firmly convinced" language. *Putz*, 662 N.W.2d at 613–14 (noting that the Hawaii court's criticism of the "firmly convinced" formula was "valid"). Yet, it found the instruction's overall language acceptable in large part due to the other amplifications within the instructions. *Id.* at 614–15; *see also Winegeart v. State*, 665 N.E.2d 893, 904–05 (Ind. 1996) (DeBruler, J., concurring in result) ("I do not believe that 'firmly convinced' equates to 'beyond a reasonable doubt.' Both objectively and subjectively, 'firmly convinced'

seems more similar to 'clear and convincing' than to beyond a 'reasonable doubt.' "); *State v. Crenshaw*, 366 N.E.2d 84, 85 (Ohio Ct. App. 1977) (stating that the "firmly convinced" language represents an appropriate but lesser standard of proof than the former "moral certainty" language).

**C. Scholarly Commentary.** The "firmly convinced" language of the FJC has been the subject of scholarly criticism. As noted by one commentator, "[a]t least at a common sense level, it would seem possible to be 'firmly convinced' of something about which we may not have 'proof beyond a reasonable doubt.' " Miller W. Shealy, Jr., *A Reasonable Doubt About "Reasonable Doubt"*, 65 Okla. L. Rev. 251, 253 n.155 (2013). And another commentator observed: "I do not think it a semantic quibble to say that while 'firmly convinced' is a phrase less sententious and archaic than 'abiding conviction,' it does not connote the emphasis and specificity of 'subjective state of certitude' or 'subjective state of near certitude.' " Stephen J. Fortunato, Jr., *Instructing on Reasonable Doubt after* Victor v. Nebraska*: A Trial Judge's Certain Thoughts on Certainty*, 41 Vill. L. Rev. 365, 390 n.105 (1996).

> Although the meaning of "firmly convinced" is quickly grasped, the standard of proof suggested by the phrase is vague. A juror satisfied by the less rigorous "clear and convincing evidence" standard might also be described as "firmly convinced" of a fact. Determining whether proof has been established beyond a reasonable doubt requires a unique thought process. Simply stating that a juror must be "firmly convinced of the defendant's guilt" undermines this process.

Paul C. Smith, Note, *The Process of Reasonable Doubt: A Proposed Instruction in Response to* Victor v. Nebraska, 41 Wayne L. Rev. 1811, 1839 (1995).

**V. The Controversial "Hesitate to Act" Language is Not Included in ISBA's Model Instruction.**

The majority emphasizes Justice Ginsburg's offhand comment in *Victor* seemingly to approve of the "firmly convinced" approach. But, the United States Supreme Court in *Holland v. United States* declared that a reasonable doubt instruction "should have been in terms of the kind of doubt that would make a person hesitate to act." 348 U.S. 121, 140 (1954).

Of course, as the majority correctly points out, the "hesitate to act" language in a reasonable doubt instruction has been subject to criticism. *See, e.g.*, *Gilday v. Callahan*, 59 F.3d 257, 264 (1st Cir. 1995) (noting that "hesitate to act" language is arguably unhelpful); *United States v. O'Brien*, 972 F.2d 12, 15–16 (1st Cir. 1992) (per curiam) (asserting that "hesitate to act" instruction undermines the constitutionally required burden of proof). But so has the "firmly convinced" language. And, the criticism of "hesitate to act" instruction often focuses on the comparison of "conviction" in a criminal trial to important private decisions, a comparison notably not made in the ISBA's model instruction.[14]

---

[14]The Iowa State Bar Association's model instruction provides, in part:

The burden is on the State to prove (name of defendant) guilty beyond a reasonable doubt.

A reasonable doubt is one that fairly and naturally arises from the evidence in the case, or from the lack or failure of evidence produced by the State.

A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

**VI. Overview of Choices.**

I am concerned that there has been a general erosion of the concept of reasonable doubt. In the past, instructions were often based upon the concept of moral certainty but now tend to embrace secular language in an effort to update the language. But any substituted "firmly convinced" language may imply a lesser burden. *See Crenshaw*, 366 N.E.2d at 85 (characterizing "firmly convinced" as providing less of a burden than the old definition of "moral certainty" and thus giving an advantage to the state).

I would hesitate to act in this case to endorse the clipped version of the "firmly convinced" language given the advisory posture of the case, the limited briefing, and the wide variety of considerations that might be brought to bear on the question. If there is a need to address a reasonable doubt instruction yet again, I would instead engage in a rulemaking-type process on the question that can consider the issue more broadly. Empirical research showed that what definition is used makes a "significant difference" in the outcome of a case. Horowitz, 3 Psychol. Pub. Pol'y & L. at 292. Any rush decision on this important matter would be ill advised.

---

> If, after a full and fair consideration of all the evidence, you are firmly convinced of the defendant's guilt, then you have no reasonable doubt and you should find the defendant guilty.
>
> But if, after a full and fair consideration of all the evidence in the case, or from the lack or failure of evidence produced by the State, you are not firmly convinced of the defendant's guilt, then you have a reasonable doubt and you should find the defendant not guilty.

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 100.10 (2020).

If forced to choose today, however, I would not warmly embrace the old *Frei* language but would likely follow the ISBA's model instruction until we come up with something better. In the alternative, I'd give strong consideration to the formulation of reasonable doubt in the trial court's instruction approved by the First Circuit in *Cleveland*, 106 F.3d at 1062–63,[15] and to the Eighth Circuit's model instruction. But the majority makes its choice with a truncated analysis that gives insufficient attention to the crosscurrents implicated by the

---

[15]In *Cleveland*, the instruction read:

As I have said, the burden is upon the Government to prove beyond a reasonable doubt that a defendant is guilty of the charge made against the defendant. It is a strict and heavy burden, but it does not mean that a defendant's guilt must be proved beyond all possible doubt. It does require that the evidence exclude any reasonable doubt concerning a defendant's guilt.

A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence. Reasonable doubt exists when, after weighing and considering all the evidence, using reason and common sense, jurors cannot say that they have a settled conviction of the truth of the charge.

Of course, a defendant is never to be convicted on suspicion or conjecture. If, for example, you view the evidence in the case as reasonably permitting either of two conclusions—one that a defendant is guilty as charged, the other that the defendant is not guilty—you will find the defendant not guilty.

It is not sufficient for the Government to establish a probability, though a strong one, that a fact charged is more likely to be true than not true. That is not enough to meet the burden of proof beyond reasonable doubt. On the other hand, there are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt.

Concluding my instructions on the burden, then, I instruct you that what the Government must do to meet its heavy burden is to establish the truth of each part of each offense charged by proof that convinces you and leaves you with no reasonable doubt, and thus satisfies you that you can, consistently with your oath as jurors, base your verdict upon it. If you so find as to a particular charge against a defendant, you will return a verdict of guilty on that charge. If, on the other hand, you think there is a reasonable doubt about whether the defendant is guilty of a particular offense, you must give the defendant the benefit of the doubt and find the defendant not guilty of that offense.

106 F.3d at 1062–63.

reasonable doubt instruction. As a result, I cannot join the opinion on the reasonable doubt instruction question.[16]

---

[16]Davis does not challenge the constitutionality of the *Frei* instruction. There can be no abuse of discretion for giving a constitutionally valid instruction absent some other infirmity. So here, given the advocacy, it is not possible to find an abuse of discretion in this case.